# EXHIBIT A

1  Mitchell Chyette, State Bar No. 113087
2  Law Office of Mitchell Chyette
   125 12th Street, Suite 100-BALI
3  Oakland, CA 94607-3699
4  (510) 388-3748 telephone
   (510) 680-3760 facsimile
5  mitch@chyettelaw.com

6  [Additional Counsel listed on subsequent page]

7
8  Attorneys for Plaintiffs Desiree Schmitt,
   James Furth and the Putative Class

9
10              SUPERIOR COURT OF CALIFORNIA

11              COUNTY OF SAN FRANCISCO

12

13  DESIREE SCHMITT and JAMES FURTH,        Case No. **CGC-21-590105**

14  individually and on behalf of all others  COMPLAINT

15  similarly situated,                       (Class Action)

16          Plaintiffs,

17                    v.

18  SN SERVICING CORPORATION, an

19  Alaska Corporation,

20          Defendant.

21

22

23

24

25      Plaintiffs DESIREE SCHMITT and JAMES FURTH ("Plaintiffs"), by and through their

26  attorneys, on behalf of themselves and all other persons similarly situated, complain against

27  Defendant SN SERVICING CORPORATION, as follows.

28

29

30



ENDORSED
FILED
San Francisco County Superior Court

MAR 1 8 2021

CLERK OF THE COURT
BY: ANGELICA SUNGA
Deputy Clerk

**Exhibit A, Page 7**

## **PARTIES**

1.      Plaintiff DESIREE SCHMITT ("Schmitt") is a natural person and is a resident and citizen of the state of Ohio.

2.      Plaintiff JAMES FURTH ("Furth") is a natural person and is a resident and citizen of the state of Ohio.

3.      Defendant SN SERVICING CORPORATION ("SNSC" or "Defendant") is an Alaska corporation, with its principal place of business in California. SNSC's officers are located in California, and SNSC's main loan servicing operation is in Eureka, California.

## **JURISDICTION AND VENUE**

4.      The Court has personal and subject matter jurisdiction because SNSC's principal place of business is in California, it regularly does business in California, and the damages it causes affect California residents, among others.

5.      Venue is proper in this Court because SNSC's Terms and Conditions (https://borrower.snsc.com/TermsAndConditions.aspx (*last accessed* February 2, 2021)) provide that it can be sued in the Superior Court for the City and County of San Francisco, as well as a choice-of-law provision selecting the laws of the State of California, without giving effect to conflict of laws provisions.

## **GENERAL ALLEGATIONS**
## **INDUSTRY STANDARDS FOR DATA SECURITY**

6.      In light of the numerous high-profile data breaches targeting companies like Target, Neiman Marcus, eBay, Anthem, and Equifax, SNSC is, or reasonably should have been, aware of the importance of safeguarding its customers' personal and financial information, as well as of the foreseeable consequences of its systems being breached.

7.      SNSC states in its Privacy Policy (https://borrower.snsc.com/PrivacyPolicy.aspx (*last accessed* February 3, 2021)) that in order "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards, secured files and buildings."

8.      Security standards commonly accepted among businesses that store personal and financial information using the Internet include, without limitation:

    a)     Maintaining a secure firewall configuration;

    b)     Monitoring for suspicious or irregular traffic to servers;

    c)     Monitoring for suspicious credentials used to access servers;

    d)     Monitoring for suspicious or irregular activity by known users;

    e)     Monitoring for suspicious or unknown users;

    f)     Monitoring for suspicious or irregular server requests;

    g)     Monitoring for server requests for personal and financial information;

    h)     Monitoring for server requests from VPNs; and

    i)     Monitoring for server requests from Tor exit nodes.

8.      The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[1] and protection of personal and financial information[2] which includes basic security standards applicable to all types of businesses.

---

[1] *See* F.T.C., *Start with Security: A Guide for Business*, (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (*last accessed* July 23, 2020).

[2] *See* F.T.C., *Protecting Personal Information: A Guide for Business*, (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting personalinformation.pdf (*last accessed* July 23, 2020).

2
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

Exhibit A, Page 9

9.      The FTC recommends that businesses:

a)      Identify all connections to the computers where you store sensitive information;

b)      Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

c)      Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business;

d)      Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine;

e)      Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks;

f)      Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet;

g)      Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically;

h)      Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day; and

i)      Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business'

1    network, the transmission should be investigated to make sure it is
2    authorized.

3    10.    The FTC has brought enforcement actions against businesses for failing to

4    adequately and reasonably protect customer information, treating the failure to employ reasonable

5    and appropriate measures to protect against unauthorized access to confidential consumer data as

6    an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC

7    Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses

8    must take to meet their data security obligations.[3]
9

10    11.    Because SNSC was entrusted with its customers' personal and financial

11    information, it had, and has, a duty to applicants to keep their personal and financial information
12
13    secure.

14    12.    Plaintiffs and Class members reasonably expect that when they provide their

15    personal and financial information to a company, the company will safeguard their personal and

16    financial information.

17    13.    Nonetheless, SNSC failed to upgrade and maintain its data security systems in a
18
19    meaningful way so as to prevent the Data Breach described below.

20    14.    Specifically, in breach of its duties, Defendant failed to:

21        a)    Replace email filtering tools, malware software, and Internet monitoring
22             tools with more robust solutions that utilize artificial intelligence ("AI") to
              detect and block known and newly introduced malware;
23
24        b)    Block all inbound and outbound Internet, email, and network traffic to
             foreign countries;
25
26        c)    Maintain a secure firewall configuration;

27
---
[3] F.T.C., *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-
28    resources/protecting-consumer-privacy/privacy-security-enforcement (*last accessed* July 15, 2020).

4
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

Exhibit A, Page 11

d)  Monitor for suspicious or irregular traffic to servers;

e)  Monitor for suspicious credentials used to access servers;

f)  Monitor for suspicious or irregular activity by known users;

g)  Monitor for suspicious or unknown users;

h)  Monitor for suspicious or irregular server requests;

i)  Monitor for server requests for personal and financial information;

j)  Monitor for server requests from VPNs;

k)  Monitor for server requests from Tor exit nodes;

l)  Identify all connections to the computers where Defendant stores sensitive information;

m)  Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

n)  Scan computers on Defendant's network to identify and profile the operating system and open network services, and disable services that are not needed to prevent hacks or other potential security problems;

o)  Pay particular attention to the security of Defendant's web applications—the software used to give information to visitors to its websites and to retrieve information from them;

p)  Use a firewall to protect Defendant's computers from hacker attacks while it is connected to a network, especially the Internet;

q)  Determine whether a border firewall should be installed where Defendant's network connects to the Internet;

r)  Monitor incoming traffic for signs that someone is trying to hack in; and

s)  Monitor outgoing traffic for signs of a data breach.

15.  Had SNSC properly maintained its systems and adequately protected them, it could have prevented the Data Breach.

Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

Exhibit A, Page 12

## THE DATA BREACH

16.     SNSC is a financial services corporation that specializes in servicing of residential, small balance commercial, consumer, and unsecured loans. *See* https://www.snsc.com/About.aspx (last accessed Jan.29, 2021).

17.     On or about October 14, 2020, a ransomware-threat-actor group known as "Mount Locker" (hereinafter, the "Unauthorized Party") deployed ransomware into SNSC's environment and successfully exfiltrated (acquired) a number of digital files maintained by SNSC (the "Data Breach"). Based upon an investigation by a third-party cybersecurity forensics investigator hired by SNSC, the exfiltration of data from SNSC by the Unauthorized Party is believed to have ended on or about October 15, 2020.

18.     Because SNSC failed to securely maintain the personal and financial information of Plaintiffs and other Class members, the Unauthorized Party was able to exfiltrate a large amount of personal and financial information.

19.     As a result of SNSC's actions and inactions, the personal and financial information of approximately 20,155 borrowers, including citizens of the State of California, has been obtained by the Unauthorized Party.[4]

20.     Once SNSC learned of the Data Breach, SNSC notified the Federal Bureau of Investigation ("FBI") and engaged a third-party cybersecurity forensics investigator to investigate and contain the Data Breach.

21.     Despite learning of the Data Breach on or around October 15, 2020, SNSC did not send a Data Breach Notification letter to Plaintiffs and Class members until January 14, 2021. *See*

---

[4] According to information reported by SNSC to the Maine Attorney General, the Class is comprised of 20,155 members.

6

Data Breach Notification letter, attached hereto as <u>Exhibit 1</u>.

22. The Data Breach Notification letter states that a preliminary investigation revealed that the borrower's personal and financial information was acquired by the Unauthorized Party. Further, according to the Data Breach Notification letter, the preliminary investigation revealed that the data acquired by the Unauthorized Party includes March 2018 billing statements and fee notices that contain the borrower's personal and financial information including, among other information, borrower names, addresses, loan numbers, balance information, and billing information such as charges assessed, owed and/or paid. In a January 14, 2021 letter to the New Hampshire Attorney General, SNSC represented that it hired a third-party e-discovery vendor to conduct a "data mining" review of the documents that were identified to have been exfiltrated to determine whether additional personal and financial information was compromised.

23. As the Data Breach Notification letter reveals, only *after* an Unauthorized Party was able to exfiltrate a large amount of data, did SNSC start to undertake the basic steps recognized in the industry to protect Plaintiffs' and Class members' personal and financial information to bolster its cybersecurity posture by replacing email filtering tools, malware software, and Internet monitoring tools with more robust solutions that utilize AI to detect and block known and newly introduced malware, and block all inbound and outbound Internet, email, and network traffic to foreign countries.

24. As a result of the Data Breach, and as recommended by the Data Breach Notification letter, Plaintiffs and Class members must now be vigilant and review their credit reports for incidents of identity theft, and educate themselves about security freezes, fraud alerts, and other steps to protect themselves against identity theft.

25. SNSC's failure to adhere to reasonable and necessary industry standards, including

7

the FTC guidelines, resulted in the Data Breach.

26.    SNSC failed to create, implement, and maintain adequate safeguards for the online storage of personal and financial information of Plaintiffs and Class members, resulting in the Data Breach.

27.    Because of its failure to create, maintain, and/or comply with necessary cybersecurity requirements, SNSC was unable to protect borrower's information and confidentiality, and protect against obvious and readily foreseeable threats to information security and confidentiality or the unauthorized access to the personal and financial information, resulting in the Data Breach.

## **DAMAGES FROM DATA BREACHES**

28.    According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.[5]

29.    Consumers place a high value not only on their personal and financial information, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[6]

30.    The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report").[7]  The GAO Report explains that "[t]he term 'identity

---

[5] Javelin Strategy & Research, *Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017, According to New Javelin Strategy & Research Study* (Feb. 6, 2018), https://www.javelinstrategy.com/press-release/identity-fraud-hits-all-time-high-167-million-us-victims-2017-according-new-javelin (*last accessed* July 23, 2020).
[6] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf (*last accessed* July 23, 2020).
[7] "U.S. Government Accountability Office, *Data Breaches Are Frequent, but Evidence of Resulting Identity*

8

theft' is broad and encompasses many types of criminal activities, including fraud on existing accounts—such as unauthorized use of a stolen credit card number—or fraudulent creation of new accounts—such as using stolen data to open a credit card account in someone else's name." *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting the GAO Report). The GAO Report notes that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

31.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports often, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[8]

32.     Identity thieves use stolen personal and financial information for "various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes," including "credit card fraud, phone or utilities fraud, bank fraud and government fraud." *In re Zappos.com, Inc.*, 888 F.3d at 1024. The information exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiffs and Class members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are ways for hackers to exploit information they already have to get even more personally-identifying information through

---

*Theft Is Limited; However, the Full Extent Is Unknown*, 2 (June 2007) https://www.gao.gov/new.items/d07737.pdf (*last accessed* January 29, 2021).
[8] F.T.C., https://www.identitytheft.gov/Steps (*last accessed* February 2, 2021).

9
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

Exhibit A, Page 16

1  unsolicited email, text messages, and telephone calls purportedly from a legitimate company

2  requesting personal, financial, and/or login credentials.[9]

3      33.    There may be a time lag between when harm occurs versus when it is discovered,

4
   and also between when personal and financial information is stolen and when it is used. According
5
   to the U.S. Government Accountability Office, which conducted a study regarding data breaches:
6

7           [L]aw enforcement officials told us that in some cases, stolen data may be
            held for up to a year or more before being used to commit identity theft.
8           Further, once stolen data have been sold or posted on the Web, fraudulent
            use of that information may continue for years. As a result, studies that
9           attempt to measure the harm resulting from data breaches cannot necessarily
            rule out all future harm.
10

11  *See* GAO Report, at p. 29.

12      34.    Personal and financial information is such a valuable commodity to identity thieves

13  that once the information has been compromised, criminals often trade the information on the
14
   "cyber black-market" for years.
15

16      35.    Thus, there is a strong probability that entire batches of stolen information have

17  been dumped on the black market, or are yet to be dumped on the black market, meaning Plaintiffs

18  and Class members are at an increased risk of fraud and identity theft for many years into the
19
   future.
20

21      36.    Data breaches are preventable.[10] As Lucy Thompson wrote in the DATA BREACH

22  AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have

23  been prevented by proper planning and the correct design and implementation of appropriate

24  _____

25  [9] *See, e.g.*, https://www.consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams (last accessed
    Feb. 2, 2021); *see also* FBI's 2019 Internet Crime Report at p. 27 (defining phishing, vishing, smishing,
26  and pharming), available at https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120
    (*last accessed* February 3, 2021).
27  [10] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH
    AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
28                                                    10

security solutions."[11] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[12]

37.     "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs.*"[13]

### FACTS RELEVANT TO PLAINTIFF DESIREE SCHMITT

38.     Schmitt is a citizen of Ohio (and was during the period of the Data Breach).

39.     In 2004, Schmitt took out a mortgage loan with Republic Bank for property in Cleveland, Ohio. SNSC services the mortgage loan.

40.     On January 14, 2021, SNSC sent Schmitt the Data Breach Notification letter notifying her that some of her personal and financial information had been acquired by the Unauthorized Party responsible for the Data Breach. According to the Data Breach Notification letter, a preliminary investigation revealed that the data acquired by the Unauthorized Party includes Schmitt's March 2018 billing statements and fee notices that contain Schmitt's personal and financial information including, among other information, Schmitt's name, address, loan number, balance information, and billing information such as charges assessed, owed, and/or paid. The Data Breach Notification letter further states that SNSC is still in the process of conducting an investigation of the incident to determine if additional personal and financial information

---

[11] *Id.* at 17.
[12] *Id.* at 28.
[13] *Id.*

11
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

Exhibit A, Page 18

1  pertaining to Schmitt was exfiltrated by the Unauthorized Party.

2      41.    As a direct result of the Data Breach, Schmitt purchased credit monitoring with

3  Lifelock at an annual cost of more than $200.00, as well as LastPass password manager, which is

4  a monthly password manager and password vault application subscription service that costs $3.00

5  per month, and YubiKey password protection at a cost of more than $90.00.

6

7      42.    As a direct result of the Data Breach, Schmitt has spent time and energy protecting

8  and monitoring her identity and credit, spent at least four hours reviewing bank accounts and

9  statements, spent at least 10 hours changing hundreds of passwords related to her business and

10 personal accounts, and she will have to spend additional time and energy in the future continuing

11 to monitor and protect her identity and credit. As a direct result of the Data Breach, Schmitt has

12

13 suffered anxiety, emotional distress, and loss of privacy.

14

15                    **FACTS RELEVANT TO PLAINTIFF JAMES FURTH**

16     43.    Furth is a citizen of Ohio (and was during the period of the Data Breach).

17     44.    SNSC services the mortgage loan for Furth's property located in Aurora, Ohio.

18     45.    On January 14, 2021, Furth learned of the Data Breach and the Data Breach

19 Notification letter.  According to the Data Breach Notification letter, a preliminary investigation

20 revealed that the data acquired by the Unauthorized Party responsible for the Data Breach includes

21 billing statements and fee notices that contain Furth's personal and financial information including,

22

23 among other information, Furth's name, address, loan number, balance information, and billing

24 information such as charges assessed, owed, and/or paid. The Data Breach Notification letter

25 further states that SNSC is still in the process of conducting an investigation of the incident to

26 determine if additional personal and financial information pertaining to Furth was exfiltrated by

27

28

the Unauthorized Party.

46.   After the Data Breach, Furth purchased LifeLock identity theft protection at an annual cost of $99.48.

47.   As a direct result of the Data Breach, Furth has spent time and energy protecting and monitoring his identity and credit, and he will have to spend additional time and energy in the future continuing to monitor and protect his identity and credit. As a direct result of the Data Breach, Furth has suffered anxiety, emotional distress, and loss of privacy.

### PLAINTIFFS' AND CLASS MEMBERS' DAMAGES

48.   As a direct and proximate result of SNSC's conduct, Plaintiffs and the Class members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

49.   Plaintiffs and members of the Class have or will suffer actual injury as a direct result of the Data Breach including:

      a)     Spending time reviewing finding fraudulent charges and remedying fraudulent charges;

      b)     Purchasing credit monitoring and identity theft prevention;

      c)     Time and money addressing and remedying identity theft;

      d)     Spending time placing "freezes" and "alerts" with credit reporting agencies and, subsequently, temporarily lifting a security freeze on a credit report, or removing a security freeze from a credit report;

      e)     Spending time on the phone with or visiting financial institutions to dispute fraudulent charges;

      f)     Contacting their financial institutions and closing or modifying financial accounts compromised as a result of the Data Breach; and

      g)     Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

50.   Moreover, Plaintiffs and the Class members have an interest in ensuring that their

13
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

Exhibit A, Page 20

personal and financial information is protected from further breaches by the implementation of security measures and safeguards, including making sure that the storage of data containing their personal and financial information is secure.

51.     As a direct and proximate result of SNSC's actions and inactions, Plaintiffs and Class members have suffered anxiety, emotional distress, and loss of privacy.

52.     As a direct and proximate result of SNSC's actions and inactions, Plaintiffs and Class members are at an increased and immediate risk of future harm, including from identity theft and fraud related to their financial accounts.

53.     As a result of the Data Breach, Plaintiffs and Class members are at an imminent risk of identity theft and fraud. This risk will continue to exist for years to come, as Plaintiffs and Class members must spend their time being extra vigilant, due to Defendant's failures, to try to prevent being victimized for the rest of their lives.

54.     Because Defendant presented such a soft target to cyber criminals, Plaintiffs and Class members have already been subjected to violations of their privacy, and have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class members must now and in the future, spend time to more closely monitor their financial accounts to guard against identity theft and other fraud.

55.     Plaintiffs and Class members may also incur out-of-pocket costs for, among other things, purchasing credit monitoring services or other protective measures to deter and detect identity theft.

## APPLICATION OF CALIFORNIA LAW TO
## THE CLAIMS OF PLAINTIFFS AND THE CLASS

56.     The State of California has a significant interest in regulating the conduct of

14
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

Exhibit A, Page 21

businesses operating within its borders. California seeks to protect the rights and interests of all California residents and citizens of the United States against a company with its principal place of business in California. California has a greater interest in the claims of Plaintiffs and members of the Class than any other state, and is most intimately concerned with the claims and outcome of this litigation.

57.     The principal place of business of SNSC, located in Eureka, California, is the "nerve center" of its business activities – the place where its high-level officers direct, control, and coordinate the company's activities, including its data security functions and policy, financial, and legal decisions.

58.     As indicated by the Data Breach Notification letter, SNSC's response to the Data Breach at issue here, and corporate decisions surrounding such response, were made from and in California.

59.     SNSC's breaches of duty to Plaintiffs and Class members emanated from California.

60.     Application of California law to the Class with respect to Plaintiffs' and Class members' claims is neither arbitrary nor fundamentally unfair because California has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiffs and the Class.

61.     Under California's choice of law principles, the common law of California applies to the common law claims of all Class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's Unfair Competition Law may be applied to non-resident consumer plaintiffs as against this resident-defendant. Further, SNSC's Terms and Conditions include a venue provision selecting venue

15
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

Exhibit A, Page 22

within the City and County of San Francisco, California, as well as a choice-of-law provision selecting the laws of the State of California, without giving effect to conflict of laws provisions.[14]

## CLASS ALLEGATIONS

62.     **Class Definition**: Plaintiffs bring this action pursuant to Code of Civil Procedure Section 382 on behalf of a class of similarly situated individuals and entities ("the Class"), defined as follows:

> All borrowers whose loans were or are serviced by SN Servicing Corporation and whose personal and financial information was acquired in the Data Breach.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

63.     **Numerosity**: According to information provided by SNSC to the Maine Attorney General, the personal and financial information of 20,155 people was acquired by the Unauthorized Party in the Data Breach. Thus, the Class is so numerous that joinder of all members is impracticable. Class members can easily be identified through records of the SNSC, or by other means.

64.     **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiffs and Class members, which predominate over any individual issues, including:

16
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

Exhibit A, Page 23

a)   Whether SNSC stored Plaintiffs' and Class members' personal and financial information without adequate security and protections;

b)   Whether SNSC adopted, implemented, and maintained reasonable safeguards to prevent the unauthorized access to the personal and financial information of Plaintiffs and members of the Class;

c)   Whether SNSC failed to notify Plaintiffs and members of the Class about the Data Breach expeditiously and without unreasonable delay after the Data Breach was discovered;

d)   Whether SNSC owed a duty to Plaintiffs and members of the Class to safeguard and protect their personal and financial information;

e)   Whether SNSC breached a duty to Plaintiffs and members of the Class to safeguard and protect their personal and financial information;

f)   Whether SNSC breached a duty to Plaintiffs and members of the Class by failing to adopt, implement, and maintain reasonable safeguards to protect the personal and financial information of Plaintiffs and members of the Class; and

g)   Whether SNSC is liable for the damages suffered by Plaintiffs and members of the Class as a result of the Data Breach.

65.   **Typicality**: Plaintiffs' claims are typical of the claims of members of the Class. All claims are based on the same legal and factual issues. The personal and financial information of Plaintiffs and each of the Class members was exfiltrated by an Unauthorized Party in the Data Breach. Defendant's actions and inactions in storing the information were uniform to Plaintiffs and all Class members.

66.   **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of any members of the Class, and Defendant has no defenses unique to Plaintiffs. The questions of law

17
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.


Exhibit A, Page 24

1    and fact common to the proposed Class predominate over any questions affecting only individual

2    members of the Class.

3           67.    **Superiority**: A class action is superior to other available methods for the fair and

4

5    efficient adjudication of this controversy.  The expense and burden of individual litigation would

6    make it impracticable or impossible for proposed members of the Class to prosecute their claims

7    individually. The trial and the litigation of Plaintiffs' claims are manageable.

8                          **FIRST CAUSE OF ACTION**
                                   Negligence
9                     *(On behalf of Plaintiffs and the Class)*

10

11          68.    Plaintiffs repeat and reallege the allegations of paragraphs 1-67 with the same force

12   and effect as though fully set forth herein.

13          69.    SNSC's actions and inactions were of the type that would result in foreseeable,

14
     unreasonable risk of harm to Plaintiffs and Class members. SNSC knew, or should have known,
15
     of the risks inherent in collecting and storing the personal and financial information of Plaintiffs
16
17   and Class members and the importance of adequate security in storing the information.

18   Additionally, SNSC was well aware of numerous, well-publicized data breaches that exposed the

19   personal and financial information of individuals.

20          70.    SNSC had a common law duty to prevent foreseeable harm to those whose personal

21   and financial information it was entrusted. This duty existed because Plaintiffs and Class members

22
     were the foreseeable and probable victims of the failure of SNSC to adopt, implement, and
23
24   maintain reasonable security measures so that Plaintiffs' and Class members' personal and

25   financial information would not be unsecured and accessible by unauthorized persons.

26

27

28
                                           18

71.     SNSC had a special relationship with Plaintiffs and Class members. SNSC was entrusted with Plaintiffs' and Class members' personal and financial information, and SNSC was in a position to protect the personal and financial information from unauthorized access.

72.     As a mortgage loan servicer SNSC is not chosen by the borrower to service loans or to safeguard the borrower's personal information; instead, SNSC is chosen by their lender. A borrower whose loan is serviced by SNSC is a captive customer of SNSC. Borrowers do not have the opportunity to move their account to a different mortgage loan servicer because of concerns about SNSC's ability to protect their private and sensitive personal financial information.

73.     The duties of SNSC also arose under section 5 of the FTC Act, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect individuals' personal and financial information by companies. Various FTC publications and data security breach orders further form the basis of the duties of SNSC.

74.     SNSC had a duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Plaintiffs' and Class members' personal and financial information in its possession so that the personal and financial information would not come within the possession, access, or control of unauthorized persons.

75.     More specifically, the duties of SNSC included, among other things, the duty to:

a)      Adopt, implement, and maintain adequate security measures for protecting an individual's personal and financial information to ensure that the information is not accessible online by unauthorized persons; and

b)      Adopt, implement, and maintain processes to quickly detect a data breach and to promptly act on warnings about data breaches, and notify affected persons without unreasonable delay.

Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

76.     SNSC breached the foregoing duties to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting individual's personal and financial information in its possession so that the information would not come within the possession, access, or control of unauthorized persons.

77.     SNSC acted with reckless disregard for the security of the personal and financial information of Plaintiffs and the Class because SNSC knew or should have known that its data security was not adequate to safeguard the personal and financial information that was collected and stored.

78.     SNSC acted with reckless disregard for the rights of Plaintiffs and the Class members by failing to promptly detect the Data Breach, and further, by failing to notify Plaintiffs and the Class members of the Data Breach in the most expedient time possible and without unreasonable delay pursuant to Cal. Civ. Code § 1798.82, Ohio Rev. Code Ann. § 1349.19, and other applicable state data-breach notification statutes, so that Plaintiffs and Class members could promptly take measures to protect themselves from the consequences of the unauthorized access to the personal and financial information compromised in the Data Breach. Indeed, SNSC violated Ohio Rev. Code Ann. § 1349.19(B)(2) by failing to provide the requisite notice of the Data Breach to Plaintiffs and Ohio Class members by November 29, 2020 (*i.e.*, within 45 days after SNSC discovered the Data Breach).

79.     As a result of the conduct of SNSC, Plaintiffs and Class members have suffered and will continue to suffer foreseeable harm. Plaintiffs and Class members have suffered actual damages including, but not limited to, imminent risk of identity theft; expenses and/or time spent on credit monitoring for a period of years; time spent scrutinizing bank statements, credit card statements, and credit reports; time spent initiating fraud alerts and credit freezes and subsequently

temporarily lifting credit freezes; and increased risk of future harm. Further, Plaintiffs and Class

members have suffered and will continue to suffer other forms of injury and/or harm including,

but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-

economic losses. Class members are also at the mercy of SNSC for the implementation of future

measures to protect their data security, and they deserve to have transparent and accountable

measures taken to protect that data from future cyber attacks.

WHEREFORE, Plaintiffs and Class members pray for judgment as set forth below.

### SECOND CAUSE OF ACTION
**Invasion of Privacy**
*(On Behalf of Plaintiffs and the Class)*

80.    Plaintiffs repeat and reallege the allegations of paragraphs 1-67 with the same force

and effect as though fully set forth herein.

81.    Defendant invaded the right to privacy of Plaintiffs and Class members by

displaying, disclosing, and allowing unfettered access of their personal and financial information

to unauthorized and unknown individuals, and by failing to employ reasonable and necessary

safeguards to prevent unauthorized access to Plaintiffs' and Class members' personal and financial

information.

82.    Plaintiffs' and Class members' personal and financial information was held

privately and confidentially by them, and was to be used only for legitimate personal and financial

purposes. They only entrusted their personal and financial information to Defendant as necessary

for legitimate purposes, and required Defendant to hold the personal and financial information in

confidence at all times and protect it against unauthorized disclosures. Plaintiffs and Class

members were reasonable in expecting Defendant to maintain the security and confidentiality of

---

21

Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.

their personal and financial information. Indeed, Defendant promised to protect Plaintiffs and Class members' personal and financial information.[15]

83.    Defendant's conduct was and is highly offensive to a reasonable person with ordinary sensibilities.

84.    As a result of the conduct of SNSC, Plaintiffs and Class members have suffered and will continue to suffer actual damages including, but not limited to, risk of identity theft; expenses and/or time spent on credit monitoring for a period of years; time spent scrutinizing bank statements, credit card statements, and credit reports; time spent initiating fraud alerts and credit freezes and subsequently temporarily lifting credit freezes, and increased risk of future harm. Further, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

WHEREFORE, Plaintiffs and Class members pray for judgment as set forth below.

### THIRD CAUSE OF ACTION
**Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq***
***(On Behalf of Plaintiffs and the Class)***

85.    Plaintiffs repeat and reallege the allegations of paragraphs 1-67 with the same force and effect as though fully set forth herein.

86.    SNSC has violated Business and Professions Code §17200 *et seq.* with respect to servicing Plaintiffs' and Class members' mortgage loans and collecting and storing Plaintiffs' and Class members' personal and financial information by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute

---

[15] *See* https://borrower.snsc.com/PrivacyPolicy.aspx (*last accessed* February 3, 2021).

22

acts of "unfair competition" as defined in Cal. Bus. Prof. Code §17200, including but not limited to the following:

a)   Failing to establish adequate security practices and procedures for maintaining and storing Plaintiffs' and Class members' personal and financial information, and storing Plaintiffs' and Class members' personal and financial information in an unsecure electronic environment. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. SNSC's practice was also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal and financial data utilize appropriate security measures, as reflected by laws like 15 U.S.C. § 45 and Cal. Civ. Code § 1798.81.5. The harm these practices caused to Plaintiffs and Class members outweighed their utility, if any;

b)   Collecting Plaintiffs' and Class members' personal and financial information with knowledge that the information would not be adequately protected, and storing Plaintiffs' and Class members' personal and financial information in an unsecure electronic environment;

c)   Representing that SNSC would protect Plaintiffs' and Class members' personal and financial information from unauthorized access and use by using security measures that comply with federal law, and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections.

87.   SNSC engaged in unfair acts and practices by failing to disclose the Data Breach to Class Members in a timely manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82, Ohio Rev. Code Ann. § 1349.19, and other state data breach notification statutes that are applicable. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. The harm these practices caused to Plaintiffs and Class members outweighed their utility, if any.

88.   SNSC engaged in unfair acts and practices by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Class members' personal and financial information from further unauthorized disclosure, release, data breaches,

23

and theft. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. The harm these practices caused to Plaintiffs and Class members outweighed their utility, if any.

89.     SNSC engaged in unlawful business practices by violating California Financial Code Section 4052.5 and/or California Civil Code Section 1798.82.

90.     As a direct and proximate result of SNSC's acts of unfair and unlawful practices and acts, Plaintiffs were injured and lost money or property, including the loss of her legally protected interest in the confidentiality and privacy of their personal and financial information, and additional losses described above.

91.     SNSC knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiffs' and Class members' personal and financial information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

92.     Class members seek relief under Cal. Bus. & Prof. Code § 17200, *et seq.*, including, but not limited to, restitution to Plaintiffs and Class members of money or property that Defendant may have acquired by means of Defendant's deceptive, unlawful, and unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Pro. § 1021.5), and injunctive or other equitable relief.

WHEREFORE, Plaintiffs and Class members pray for judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs DESIREE SCHMITT and JAMES FURTH, individually, and on behalf of all others similarly situated, respectfully request that judgment be entered in their favor and against SNSC, as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action, and certifying the Class defined herein;

B.    Appointing Plaintiffs as representatives of the Class;

C.    Appointing Plaintiffs' counsel as counsel for the Class;

D.    Entering judgment in favor of Plaintiffs and the Class against Defendant;

E.    Awarding Plaintiffs and Class members actual damages, and all other forms of available relief, as applicable;

F.    Awarding Plaintiffs and the Class attorney's fees and costs, including interest thereon as allowed or required by law; and

G.    Granting all such further and other relief as the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs DESIREE SCHMITT and JAMES FURTH, individually, and on behalf of all others similarly situated, hereby demand a trial by jury on all claims so triable.

Dated: March 12, 2021          Law Office of Mitchell Chyette

By: _Mitchell Chyette_
Mitchell Chyette
*Counsel for Plaintiffs and the putative Class*
125 12th Street, Suite 100-BALI
Oakland, CA 94607-3699
(510) 388-3748
(510) 680-3760 facsimile
*mitch@chyettelaw.com*

25

Complaint
*Schmitt, et al. v. SN Servicing Corp.,* Case No.

Exhibit A, Page 32

1    Thomas A. Zimmerman, Jr. (*pro hac vice anticipated*)
     *tom@attorneyzim.com*
2    Sharon Harris (*pro hac vice* anticipated)
     *sharon@attorneyzim.com*
3    **ZIMMERMAN LAW OFFICES, P.C.**
4    77 W. Washington Street, Suite 1220
     Chicago, Illinois 60602
5    (312) 440-0020 telephone
6    (312) 440-4180 facsimile
     *www.attorneyzim.com*
7    *firm@attorneyzim.com*

8    Marc E. Dann (*pro hac vice* anticipated)
9    Brian D. Flick (*pro hac vice* anticipated)
     **DANNLAW**
10   P.O. Box 6031040
     Cleveland, Ohio 44103
11   (216) 373-0539 telephone
     (216) 373-0536 facsimile
12   *notices@dannlaw.com*

13
     *Counsel for Plaintiffs and the putative Class*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26
Complaint
*Schmitt, et al. v. SN Servicing Corp.*, Case No.


Exhibit A, Page 33

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SN Servicing Corporation, an Alaska Corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Desiree Schmitt and James Furth, individually and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court for the City and County of San Francisco, 400 McAllister Street, San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):* CGC-21-590105

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Office of Mitchell Chyette,
125 12th Street, Suite 100-BALI, Oakland, CA 94607 / 510.388.3748 / mitch@chyettelaw.com

DATE: MAR 15 2021    Clerk of the Court    Clerk, by ANGELICA SUNGA    Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* SN SERVICING CORPORATION; an Alask. Corporation
under: ☑ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

BY FAX

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **AUG-11-2021** |
| **TIME:** | **10:30AM** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

---

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

---

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

---

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

---

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

**Exhibit A, Page 35**

 **Superior Court of California**
County of San Francisco 

**HON. SAMUEL K. FENG**
**PRESIDING JUDGE**

# Judicial Mediation Program

**ELIZABETH M. KELBER**
**ADR ADMINISTRATOR**

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to, personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program is:

The Honorable Angela Bradstreet
The Honorable Suzanne R. Bolanos
The Honorable Rochelle C. East
The Honorable Harold E. Kahn
The Honorable Curtis E.A. Karnow
The Honorable Kathleen A. Kelly
The Honorable Stephen M. Murphy

The Honorable Vedica Puri
The Honorable Jeffrey S. Ross
The Honorable Gerardo C. Sandoval
The Honorable Richard B. Ulmer, Jr.
The Honorable Mary E. Wiss
The Honorable Garrett L. Wong

Parties interested in Judicial Mediation must file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program and deliver a courtesy copy to Department 610. A preference for a specific judge may be indicated on the request, and although not guaranteed due to the judge's availability, every effort will be made to fulfill the parties' choice for a particular judge. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court's Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

**Alternative Dispute Resolution**
400 McAllister Street, Room 103-A, San Francisco, CA 94102
(415) 551-3869

01/2021 (ek)



### Superior Court of California, County of San Francisco
### Alternative Dispute Resolution
### Information Package



> The plaintiff must serve a copy of the ADR Information Package on each defendant along
> with the complaint. Cross-complainants must serve a copy of the ADR Information Package
> on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for
settling a dispute without a trial. There are many different ADR processes, the most common forms of
which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide
disputes or help parties decide disputes themselves. They can help parties resolve disputes without
having to go to trial.

## WHY CHOOSE ADR?

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should
participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or
some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks,
  through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than
  in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have
  reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to
respond to a complaint or cross-complaint\*\***

## WHAT ARE THE ADR OPTIONS?

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The
programs are described below:

## 1) MANDATORY SETTLEMENT CONFERENCES

Settlement conferences are appropriate in any case where settlement is an option. The goal of
settlement conferences is to provide participants an opportunity to reach a mutually acceptable
settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the
court and are often held near the date a case is set for trial, although they may be held earlier if
appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement
conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by
the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

**Exhibit A, Page 37**

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

## 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.</u>

Exhibit A, Page 39

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br> ATTORNEY FOR *(Name):* | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO <br> 400 McAllister Street <br> San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: <br><br> DEFENDANT/RESPONDENT: | |
| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: _____ <br> **DEPARTMENT 610** |

**1)   The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐   **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐   **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐   **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐   **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐   **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

   Judge Requested (see list of Judges currently participating in the program): _____

   Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

   ☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐   **Other ADR process** (describe) _____

**2)   The parties agree that the ADR Process shall be completed by (date):** _____
**3)   Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

| | |
|---|---|
| _____ <br> Name of Party Stipulating | _____ <br> Name of Party Stipulating |
| _____ <br> Name of Party or Attorney Executing Stipulation | _____ <br> Name of Party or Attorney Executing Stipulation |
| _____ <br> Signature of Party or Attorney | _____ <br> Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐   *Additional signature(s) attached*

ADR-2   10/18                     **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

1
2
3
4
5
6

MITCHELL CHYETTE [113087]
Law Office of Mitchell Chyette
125 12th Street
Suite 100-BALI
Oakland, CA 94607
Telephone: (510) 388-3748
Email: mitch@chyettelaw.com
Attorney for Desiree Schmitt and James Furth

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**04/16/2021**
**Clerk of the Court**
BY: ERNALYN BURA
Deputy Clerk

7
8
9
10
11
12

IN THE SUPERIOR COURT OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

DESIREE SCHMITT AND JAMES FURTH,

        Plaintiffs,

    vs

SN SERVICING CORP.,

        Defendant.

Case No. CGC-21-590105

***EX PARTE* APPLICATION FOR PERMISSION TO APPEAR *PRO HAC VICE***

Date: April 21, 2021
Time: 11:00 AM
Dept. 302

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

## NOTICE OF HEARING and APPLICATION

Please take notice that on April 21, 2021, at 11:00 AM in Department 302 of this court, 400 McAllister Street, San Francisco, CA 94102, the plaintiffs will present an *ex parte* application for permission for Marc E. Dann and Thomas A. Zimmerman, Jr. to appear *pro hac vice* on behalf of the plaintiffs pursuant to Rule 9.40 of the California Rules of Court. Their individual applications are being filed contemporaneously with this application.

The application is made on the grounds that the plaintiffs originally sought out the two out-of-state attorneys to represent them as they are especially knowledgeable in the areas of law raised in the complaint. The application is based on this Notice and Application, the Declaration of Mitchell Chyette below, the Applications of Thomas A. Zimmerman, Jr., and Marc E. Dann for Permission to Appear *Pro Hac Vice*, the records of the Court and such evidence as the Court may admit at the time of the hearing.

Dated: April 14, 2021                    Law Office of Mitchell Chyette

By: _____

Mitchell Chyette
Attorney for Desiree Schmitt and James Furth

**DECLARATION OF MITCHELL CHYETTE / PROOF OF SERVICE**

Mitchell Chyette declares:

1. I am a member of the State Bar of California. I represent the plaintiffs in this action.

2. I was invited by the plaintiffs to join Messrs. Marc E. Dann and Thomas A. Zimmerman, Jr. in representing them in this action. I am familiar with the attorneys and know that they have particular expertise in the areas of law raised in the Complaint in this action. I have been retained by the plaintiffs as part of the group of lawyers representing them.

3. This notice and application and the accompanying applications for permission to appear *pro hac vice* will be filed with the State Bar of California once this application is filed with the Court.

Re: Notice to Opposing Party

4. Other than the State Bar, there is no one else to whom notice of this application can be given because the Summons and Complaint have not yet been served on the defendant.

Executed this 8th day of April 2021 in Oakland, California.

I declare under penalty of perjury that the foregoing is true.

_____
Mitchell Chyette

Ex Parte Application for Permission to Appear Pro Hac Vice
*Schmitt and Furth v.* , Case No. CGC-21-590105

**Exhibit A, Page 43**

1  MITCHELL CHYETTE [113087]
2  Law Office of Mitchell Chyette
   125 12th Street
3  Suite 100-BALI
   Oakland, CA 94607
4  Telephone: (510) 388-3748
5  Email: mitch@chyettelaw.com
6  Attorney for Desiree Schmitt and James Furth

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**04/16/2021**
**Clerk of the Court**
BY: ERNALYN BURA
Deputy Clerk

7

8

9                    IN THE SUPERIOR COURT OF CALIFORNIA
10
11                      COUNTY OF SAN FRANCISCO
12
13  DESIREE SCHMITT AND JAMES        Case No. CGC-21-590105
    FURTH,
14
15              Plaintiffs,          **APPLICATION OF MARC E. DANN**
                                     **FOR PERMISSION TO APPEAR**
16          vs                       ***PRO HAC VICE***
17
18  SN SERVICING CORP.,
19              Defendant.
20
21
22
23
24
25
26
27
28
29
30
31
32

Application of Marc E. Dann for Permission to Appear *Pro Hac Vice*
*Schmitt and Furth v. SN Servicing Corp.*, Case No. CGC-21-590105

**Exhibit A, Page 44**

1  TO: THE SUPERIOR COURT

2      I, Marc E. Dann, hereby apply for permission to appear *pro hac vice* in this

3  action according to Rule 9.40 of the California Rules of Court. In support of my

4  application, I submit the following declaration:

5      1.      I am the founding partner of The Dann Law Firm, located at 2728 Euclid

6  Avenue, Cleveland, OH 44115, phone: 216-373-0539, email: mdann@dannlaw.com.

7  My residential address is 1008 Summit Avenue, Lakewood, OH 44107.

8      2.      I have been retained by the plaintiffs Desiree Schmitt and James Furth

9  to represent them in the above-referenced action.

10     3.      I will be appearing in association with:

11             MITCHELL CHYETTE [113087]
               Law Office of Mitchell Chyette
12             125 12th Street
               Suite 100-BALI
13             Oakland, CA 94607
               Telephone: (510) 388-3748
14             Email: mitch@chyettelaw.com
15

16  He is the current attorney of record

17     4.      I am not a member of the State Bar of California. I do not have regular

18  employment in California. I do not regularly engage in substantial business or

19  professional activities in California.

20     5.      I certify that I am eligible for admission *pro hac vice* before this Court. I

21  am a member in good standing of the Ohio State Bar Association (No. 0039425). I was

22  admitted to the Ohio State Bar Association on November 16, 1987. I was admitted to

23  practice before the United States District Court for the Northern District of Ohio on

24  October 8, 1991; the United States District Court for the Southern District of Ohio on

25  March 28, 2006; the United States Bankruptcy Court for the Northern District of

26  Ohio on October 8, 1991; the United States Bankruptcy Court for the Southern

27  District of Ohio on March 28, 2016; the United States District Court for the Northern

28  District of Illinois on October 15, 2015; the United States District Court for the

29  Northern District of Indiana on August 29, 2016, and the Sixth Circuit Court of

30  Appeals on April 4, 1991.

31

32

1

Application of Marc E. Dann for Permission to Appear *Pro Hac Vice*
*Schmitt and Furth v. SN Servicing Corp.*, Case No. CGC-21-590105

**Exhibit A, Page 45**

6.      I am a licensee in good standing in all the courts to which I am admitted to practice. A copy of my certificate of good standing for the Ohio State Bar Association is attached as Exhibit A.

7.      I am not prohibited from appearing in any of the above-mentioned courts.

8.      I previously applied for and was granted permission to appear *pro hac vice* in the following California cases:

- *Baker v. LoanCare LLC,* USDC Central District of California, Case No. 19-cv-2103 (11/7/2019);
- *Mizrahi v. Real Time Resolutions Inc. et al.,* USDC Central District of California, Case No. 19-cv-2623 (7/5/2019);
- *Seward v. Wells Fargo Bank N.A.,* USDC Central District of California. Case No.19-cv-960 (7/8/2019), and
- *Corona v. PNC Bank,* USDC Central District of California, Case No. 19-cv-4092 (10/21/2019).

Executed this 7th day of April 2021 in Cleveland, Ohio,

I declare under penalty of perjury of the laws of the State of California that the foregoing is true.

Marc E. Dann (State of Ohio Bar No. 0039425)

**Exhibit A, Page 46**

# EXHIBIT A.

 # THE SUPREME COURT *of* OHIO

## CERTIFICATE OF GOOD STANDING

I, GINA WHITE PALMER, Director of the Attorney Services Division of the Supreme Court of Ohio, do hereby certify that I am the custodian of the records of the Office of Attorney Services of the Supreme Court and that the Attorney Services Division is responsible for reviewing Court records to determine the status of Ohio attorneys. I further certify that, having fulfilled all of the requirements for admission to the practice of law in Ohio,

**Marc Edward Dann**
Attorney Registration No. **39425**

was admitted to the practice of law in Ohio on November 16, 1987; has registered as an active attorney pursuant to the Supreme Court Rules for the Government of the Bar of Ohio; is in good standing with the Supreme Court of Ohio; and is entitled to practice law in this state.



IN TESTIMONY WHEREOF, I have subscribed my name and affixed the seal of the Supreme Court, this 25th day of March, 2021.

GINA WHITE PALMER
*Director, Attorney Services Division*

Bradley J. Martinez
*Attorney Services Counsel*

No. 2021-03-26-1
Verify by email at GoodStandingRequests@sc.ohio.gov

1  MITCHELL CHYETTE [113087]
2  Law Office of Mitchell Chyette
   125 12th Street
3  Suite 100-BALI
   Oakland, CA 94607
4  Telephone: (510) 388-3748
5  Email: mitch@chyettelaw.com
6  Attorney for Desiree Schmitt and James Furth

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**04/16/2021**
**Clerk of the Court**
BY: ERNALYN BURA
Deputy Clerk

7

8                  IN THE SUPERIOR COURT OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10

11
   DESIREE SCHMITT AND JAMES          Case No. CGC-21-590105
12 FURTH,
                                      **APPLICATION OF THOMAS A.**
13          Plaintiffs,               **ZIMMERMAN, JR., FOR**
                                      **PERMISSION TO APPEAR *PRO***
14     vs                             ***HAC VICE***
15
16 SN SERVICING CORP.,
17
            Defendant.
18

19
20
21
22
23
24
25
26
27
28
29
30
31
32

Application of Thomas A. Zimmerman, Jr., for Permission to Appear *Pro Hac Vice*
*Schmitt and Furth v. SN Servicing Corp.*, Case No. CGC-21-590105

**Exhibit A, Page 49**

TO: THE SUPERIOR COURT

I, Thomas A. Zimmerman, Jr., hereby apply for permission to appear *pro hac vice* in this action according to Rule 9.40 of the California Rules of Court. In support of my application, I submit the following declaration:

1.       I am the principal of Zimmerman Law Offices, P.C., 77 West Washington Street, Suite 1220, Chicago, Illinois 60602, Tel: (312) 440-0020, Fax: (312) 440-4180, email: tom@attorneyzim.com.  My home address is 423 South Lincoln Street, Hinsdale, Illinois 60521.

2.       I have been retained by the plaintiffs Desiree Schmitt and James Furth to represent them in the above-referenced action.

3.       I will be appearing in association with:

> MITCHELL CHYETTE [113087]
> Law Office of Mitchell Chyette
> 125 12th Street
> Suite 100-BALI
> Oakland, CA 94607
> Telephone: (510) 388-3748
> Email: mitch@chyettelaw.com

He is the current attorney of record.

4.       I am not a member of the State Bar of California. I do not have regular employment in California. I do not regularly engage in substantial business or professional activities in California.

5.       I certify that I am eligible for admission *pro hac vice* before this Court. I am a member in good standing of the Bar of the State of Illinois.  My Illinois Bar number is 6231944, and I was admitted to the Bar of the State of Illinois on July 23, 1996.  I have remained a member in good standing of the Illinois Bar.  I was admitted to practice before the United States District Court for the Northern District of Illinois on September 5, 1996.  I was admitted to practice before the United States District Court for the Southern District of Illinois on January 10, 2003. I was admitted to practice before the United States District Court of the Central District of Illinois on January 13, 2015.  I was admitted to practice before the United States District Court for the Eastern District of Wisconsin on May 1, 2015.  I was admitted to practice

1
Application of Thomas A. Zimmerman, Jr., for Permission to Appear *Pro Hac Vice*
*Schmitt and Furth v. SN Servicing Corp.*, Case No. CGC-21-590105

**Exhibit A, Page 50**

before the United States District Court of Colorado on June 17, 2013.  I was admitted to practice before the United States Court of Appeals for the Sixth Circuit on May 29, 2020.  I was admitted to practice before the United States Court of Appeals for the Seventh Circuit on August 30, 1996.  I was admitted to practice before the United States Court of Appeals for the Ninth Circuit on December 8, 2020. I was admitted to practice before the United States Supreme Court on September 17, 1999.

6.    I am a licensee in good standing in all the courts to which I am admitted to practice.

7.    I have had no disciplinary or grievance proceedings filed against me, and I have never been disbarred or suspended from practice before any court, department, bureau, or commission of any State or the United States, nor have I ever received any reprimand from any such court, department, bureau or commission pertaining to conduct of fitness as a member of the bar.

8.    I previously applied for permission to appear *pro hac vice* on June 12, 2020, in *Kenner v. Matterport, Inc., and DOES 1 through 100, inclusive*, Santa Clara Superior Court Case No. 19CV350887. The application was granted by Order dated July 17, 2020.

Executed this 1st day of April 2021 in Chicago, Illinois.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true.

Thomas A. Zimmerman, Jr.

1   MITCHELL CHYETTE [113087]
2   Law Office of Mitchell Chyette
    125 12th Street
3   Suite 100-BALI
    Oakland, CA 94607
4   Telephone: (510) 388-3748
5   Email: mitch@chyettelaw.com
    Attorney for Desiree Schmitt and James Furth
6

**F I L E D**

San Francisco County Superior Court

APR 2 1 2021

CLERK OF THE COURT

BY: _____
                      Deputy Clerk

7

8

9

10                IN THE SUPERIOR COURT OF CALIFORNIA

11                     COUNTY OF SAN FRANCISCO

12

13   DESIREE SCHMITT AND JAMES          Case No. CGC-21-590105
     FURTH,
14                                       [PROPOSED]
15              Plaintiffs,              ORDER GRANTING APPEARANCES
                                         *PRO HAC VICE*
16         vs

17

18   SN SERVICING CORP.,

19              Defendant.

20

21

22

23

24

25

26

27

28

29

30

31                    Order Granting Appearances *Pro Hac Vice*
                       *Schmitt and Furth v. SN Servicing Corp.*
32                          Case No. CGC-21-590105

                              **Exhibit A, Page 52**

1    The Court has reviewed the application under Rule 9.40 of the California

2  Rules of Court requesting that Marc E. Dann appear *pro hac vice* in this action.

3  Good cause appearing:

4    IT IS ORDERED that Marc E. Dann is granted permission to appear *pro hac*

5  *vice* in this action.

6

7  Date: April 21, 2021

8                                             Hon. Ethan P. Schulman

9                                          JUDGE OF THE SUPERIOR COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30                                            1

31                              Order Granting Appearances *Pro Hac Vice*
                                *Schmitt and Furth v. SN Servicing Corp.*
32                                    Case No. CGC-21-590105


Exhibit A, Page 53

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO



# ADDENDUM TO ORDER GRANTING PRO HAC VICE

Pursuant to California Government Code §70617(e)(1)(2)

EACH PRO HAC VICE ADMITTED COUNSEL IS FURTHER ORDERED:

- To pay a court fee in the amount of $500 per out-of-state attorney for each subsequent year he or she remains active in a case, in addition to any fee payable to the State Bar of California.
- The amount of the fee may change from time to time.
- The renewal fee shall be paid by each anniversary date of this order.
- No partial refunds shall be given.

1  MITCHELL CHYETTE [113087]
2  Law Office of Mitchell Chyette
   125 12th Street
3  Suite 100-BALI
   Oakland, CA 94607
4  Telephone: (510) 388-3748
5  Email: mitch@chyettelaw.com
   Attorney for Desiree Schmitt and James Furth
6

**F I L E D**

San Francisco County Superior Court

APR 2 1 2021

CLERK OF THE COURT

BY: _____
                    Deputy Clerk

7

8

9

10              IN THE SUPERIOR COURT OF CALIFORNIA

11                  COUNTY OF SAN FRANCISCO

12

13  DESIREE SCHMITT AND JAMES       | Case No. CGC-21-590105
    FURTH,                          |
14                                  | [PROPOSED]
15          Plaintiffs,             | ORDER GRANTING APPEARANCES
                                    | *PRO HAC VICE*
16      vs                          |
17                                  |
    SN SERVICING CORP.,             |
18                                  |
19          Defendant.              |

20

21

22

23

24

25

26

27

28

29

30

31          Order Granting Appearances *Pro Hac Vice*
              *Schmitt and Furth v. SN Servicing Corp.*
32                  Case No. CGC-21-590105

**Exhibit A, Page 55**

1        The Court has reviewed the application under Rule 9.40 of the California

2   Rules of Court requesting that Thomas A. Zimmerman, Jr., appear *pro hac vice* in

3   this action. Good cause appearing:

4        IT IS ORDERED that Thomas A. Zimmerman, Jr., is granted permission to

5   appear *pro hac vice* in this action.

6

7   Date: April 21, 2021

8                                  Hon. Ethan P. Schulman

9                                  JUDGE OF THE SUPERIOR COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30                                1

31                  Order Granting Appearances *Pro Hac Vice*
                    *Schmitt and Furth v. SN Servicing Corp.*

32                       Case No. CGC-21-590105

# Superior Court of California
## County of San Francisco



## ADDENDUM TO ORDER GRANTING PRO HAC VICE

Pursuant to California Government Code §70617(e)(1)(2)

EACH PRO HAC VICE ADMITTED COUNSEL IS FURTHER ORDERED:

- To pay a court fee in the amount of $500 per out-of-state attorney for each subsequent year he or she remains active in a case, in addition to any fee payable to the State Bar of California.
- The amount of the fee may change from time to time.
- The renewal fee shall be paid by each anniversary date of this order.
- No partial refunds shall be given.