1  Thomas A. Zimmerman, Jr. (pro hac vice)
   tom@attorneyzim.com
2  Sharon Harris (pro hac vice)
   sharon@attorneyzim.com
3  ZIMMERMAN LAW OFFICES, P.C.
   77 W. Washington Street, Suite 1220
4  Chicago, Illinois 60602
   (312) 440-0020 telephone
5  (312) 440-4180 facsimile
   firm@attorneyzim.com

6  [Additional Counsel listed on subsequent page]

7  Attorneys for Plaintiff Desiree Schmitt
   and the Putative Class
8

9

10              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11                    **SAN FRANCISCO DIVISION**

12  DESIREE SCHMITT, individually, and on behalf    Case No. 3:21-cv-03355-WHO
    of all others similarly situated,
13                                                   District Judge William H. Orrick
           Plaintiff,
14
        v.
15                                                   **PLAINTIFF'S NOTICE OF MOTION AND**
                                                     **UNOPPOSED MOTION FOR PRELIMINARY**
16  SN SERVICING CORPORATION, an Alaska             **APPROVAL OF CLASS ACTION**
    Corporation,                                     **SETTLEMENT; MEMORANDUM OF POINTS**
17                                                   **AND AUTHORITIES IN SUPPORT THEREOF**
           Defendant.
18                                                   Jury Trial Demanded

19                                                   Complaint filed: March 12, 2021
                                                     Trial Date: None Set
20

21

22

23

24

25

26

27                                    1
                                                                    Case No. 3:21-cv-03377-WHO
28                          Plaintiff's Notice of Motion and Unopposed
                    Motion for Preliminary Approval of Class Action Settlement

**UNOPPOSED NOTICE OF MOTION AND**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**PLEASE TAKE NOTICE** that on June 22, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiff Desiree Schmitt ("Plaintiff") shall appear before the Honorable William H. Orrick of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, via video conference, at the following link:

https://cand-uscourts.zoomgov.com/j/1611812513?pwd=anFJWCtUaHVhY2RYLzNtVDMxU3NVQT09

Webinar ID: 161 181 2513; Password: 478314

and shall there and then present Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Thomas A. Zimmerman, Jr., and materials attached as exhibits thereto.

Date: June 17, 2022

/s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr.

*Attorney for Plaintiff*
DESIREE SCHMITT

Case No. 3:21-cv-03377-WHO

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ....................................................................................1

I.  INTRODUCTION ..........................................................................................................2

II.  BACKGROUND .............................................................................................................2

    A.  Plaintiff's Claims ..............................................................................................2

    B.  History of the Litigation and Settlement Negotiations ...........................................3

    C.  Terms of the Settlement .....................................................................................3

        1.  The Proposed Settlement Class............................................................3

        2.  Changes to Data Security Practices, and Extension of Credit
            Monitoring and Identity Theft Protection .........................................4

        3.  Settlement Fund ...................................................................................5

            a.  Monetary Payments to Settlement Class Members
                Who Submit a Claim.................................................................5

            b.  Service Award to Plaintiff ...............................................5

            c.  Attorneys' Fees and Costs ...............................................6

            d.  Residual Distribution ......................................................6

            e.  Release .............................................................................6

III.  ARGUMENT ..................................................................................................................6

    A.  Legal Standard ...................................................................................................6

    B.  The Proposed Settlement Class Should Be Certified............................................7

        1.  The Class Meets the Requirements of Rule 23(a) .........................................7

        2.  The Class Meets the Requirements of Rule 23(b) .........................................8

    C.  The *Hanlon* Factors Support Preliminary Approval...........................................9

        1.  The Strength of the Plaintiff's Case.........................................................9

        2.  The Risk, Expense, Complexity, and Likely Duration of
            Further Litigation .................................................................................9

        3.  The Risk of Maintaining Class Action Status Through Trial ...................10

i

4.      The Amount Offered In Settlement ............................................................11

5.      The Extent of Discovery Completed and The Stage of Proceedings.........13

6.      The Experience and Views of Counsel.....................................................14

7.      The Presence of a Government Participant................................................14

8.      The Reaction of Class Members to the Proposed Settlement ...................14

9.      Lack of Collusion Among the Parties.......................................................14

D.      The Rule 23(e)(2) Factors Support Preliminary Approval ...................................15

1.      Plaintiff and Plaintiff's Counsel Have Adequately Represented
        the Class ....................................................................................................15

2.      The Settlement Was Negotiated at Arm's Length .....................................15

3.      The Relief Provided for the Class Is Adequate.........................................16

4.      The Proposal Treats Class Members Equitably Relative To
        Each Other ................................................................................................17

E.      The Settlement Complies With the Northern District's Procedural
        Guidance for Class Action Settlements ................................................................17

1.      If a Litigation Class Has Not Been Certified, Any Differences Between
        The Settlement Class And The Class Proposed In The Operative
        Complaint And An Explanation As To Why The Differences Are
        Appropriate In The Instant Case ..............................................................18

2.      If a Litigation Class Has Not Been Certified, Any Differences Between the
        Claims to Be Released and the Claims in the Operative Complaint and an
        Explanation as to Why the Differences Are Appropriate in the
        Instant Case ..............................................................................................18

3.      The Anticipated Class Recovery Under the Settlement, the Potential Class
        Recovery if Plaintiffs had Fully Prevailed on each of their Claims, and an
        Explanation of the Factors Bearing on the Amount of the Compromise...19

4.      The Proposed Allocation Plan for the Settlement Fund............................19

5.      If There Is a Claim Form, an Estimate of the Number and/or Percentage of
        Class Members Who Are Expected to Submit a Claim in Light of the
        Experience of the Selected Claims Administrator and/or Counsel From
        Other Recent Settlements of Similar Cases, the Identity of the Examples
        Used for the Estimate, and the Reason for the Selection of Those
        Examples....................................................................................................20

6.      In Light of Ninth Circuit Case Law Disfavoring Reversions, Whether and
        Under What Circumstances Money Originally Designated for Class

ii

Recovery Will Revert to any Defendant, the Potential Amount or Range of Amounts of any Such Reversion, and an Explanation as to Why a Reversion Is Appropriate in the Instant Case .............................................20

7.    Settlement Administration ........................................................................21

8.    Notice, Opt-Outs, and Objections.............................................................22

9.    Attorneys' Fees, Incentive Awards, and Cy Pres Awardees ....................23

10.   Timeline and CAFA Notice ......................................................................24

11.   Past Distributions .....................................................................................25

IV.   CONCLUSION.....................................................................................................26

iii

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

# TABLE OF AUTHORITIES

**_Cases_**

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997)..................................................................................................9

*Churchill Vill., LLC v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ................................................................................22

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ...............................................................................6

*Cottle v. Plaid Inc.,*
   340 F.R.D. 356 (N.D. Cal. 2021).........................................................................21

*Dolmage v. Combined Ins. Co. of Am.,*
   14 C 3809, 2017 WL 1754772 (N.D. Ill. May 3, 2017) ..........................................10

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ..........................................................................7, 9

*Hesse v. Sprint Corp.,*
   598 F.3d 581 (9th Cir. 2010) ...............................................................................18

*In re Anthem, Inc. Data Breach Litig.,*
   15-MD-02617-LHK, 2017 WL 3730912 (N.D. Cal. Aug. 25, 2017).........................8

*In re Anthem, Inc. Data Breach Litig.,*
   15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018).......................24

*In re Anthem, Inc. Data Breach Litig.,*
   327 F.R.D. 299 (N.D. Cal. 2018).............................................................13, 18, 20

*In re Bluetooth Headset Prod. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ..........................................................................14, 23

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,*
   19-MD-2879, 2022 WL 1396522 (D. Md. May 3, 2022).....................................8, 10

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.,*
   4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ..........................23

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ...............................................................................24

*In re Sonic Corp. Customer Data Sec. Breach Litig.,*
   1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019)...........11, 13, 20, 25

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
   16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ............... *passim*

*Just Film, Inc. v. Buono,*
  847 F.3d 1108 (9th Cir. 2017) ...................................................................................8

*McKnight v. Uber Techs., Inc.,*
  14-CV-05615-JST, 2017 WL 3427985 (N.D. Cal. Aug. 7, 2017)..........................6, 7

*Moreno v. Capital Bldg. Maint. & Cleaning Services, Inc.,*
  19-CV-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021) ..........................15

*Myers v. Loomis Armored US, LLC,*
  2020 WL 1815902 (W.D.N.C. Apr. 9, 2020) .........................................................22

*Rodriguez v. W. Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) .................................................................................22

*Schmitt v. SN Servicing Corp.,*
  21-CV-03355-WHO, 2021 WL 5279822 (N.D. Cal. Nov. 12, 2021) ....................3, 11

*Smith v. Triad of Alabama, LLC,*
  2017 WL 1044692 (M.D. Ala. Mar. 17, 2017).........................................................10

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ...................................................................................7

*Wal-mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ................................................................................................7

*Yokoyama v. Midland Nat. Life Ins. Co.,*
  594 F.3d 1087 (9th Cir. 2010) ...............................................................................10

**<u>Statutes, Regulations, and Rules</u>**

28 U.S.C. § 1715.............................................................................................14, 24

Fed. R. Civ. P. 23(a) .....................................................................................1, 7, 9

Fed. R. Civ. P. 23(b)(3)..................................................................................8, 22

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................22

Fed. R. Civ. P. 23(e)(2)...........................................................................1, 7, 11, 15

Cal. Civ. Code § 1798.81.5...................................................................................11

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the Settlement Class,[1] as defined in the Settlement Agreement ("SA") attached as Exhibit 1 to the Declaration of Thomas A. Zimmerman, Jr. ("Zimmerman Decl."), meets the standards under Rule 23(a), (b)(3), and (e)(1)(B)(ii) of the Federal Rules of Civil Procedure as likely to be certified for purposes of judgment on the Settlement;

2.  Whether the Settlement meets the standard under Rule 23(e)(1)(B)(i) of the Federal Rules of Civil Procedure as likely to be approved as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23(e)(2);

3.  Whether the Court should direct notice to the Settlement Class pursuant to the Notice Program set forth in the Settlement Agreement, and approve the form and content of the proposed Claim Form and Class Notice documents attached to the Settlement Agreement as Exhibits A, B, E, F;

4.  Whether to appoint Plaintiff Desiree Schmitt as the Settlement Class representative;

5.  Whether to appoint Mitchell Chyette of the Law Office of Mitchell Chyette, Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., and Marc E. Dann of DannLaw as Class Counsel.

---

[1] Unless otherwise specified, the defined terms used herein shall have the meanings as set forth in the Settlement Agreement.

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

## I.   INTRODUCTION

Plaintiff and Defendant SN Servicing Corporation ("Defendant") have reached a proposed class action settlement that, if approved by the Court, would pay to eligible claimants a projected monetary payment of approximately $75 if their Social Security Number was exposed in the Security Incident, or approximately $25 if their Personal Information, but not their Social Security Number, was exposed in the Security Incident. In addition, eligible claimants may opt to enroll in an extra year of credit monitoring and identity theft protection, which would be in addition to the one year of credit monitoring and identity theft protection that Defendant offered in July 2021. The Settlement would also require Defendant to implement enhanced information security practices.

As set forth below, the proposed Settlement meets the standard for preliminary approval as likely to be approved as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e). Accordingly, Plaintiff requests that the Court grant preliminary certification of the Settlement Class for purposes of directing notice in accordance with the Notice Program set forth in the Settlement, appoint Plaintiff as Settlement Class representative, and appoint Mitchell Chyette of the Law Office of Mitchell Chyette, Thomas A. Zimmerman, Jr. of Zimmerman Law Offices, P.C., and Marc E. Dann of DannLaw as Class Counsel.

## II.   BACKGROUND

### A.   Plaintiff's Claims

Plaintiff and proposed Settlement Class Members[2] formerly held or currently hold home loans that are or were serviced by Defendant. In January 2021, Defendant sent by U.S. mail a notification letter to Plaintiff and Settlement Class Members notifying them that third parties may have accessed Defendant's customers' Personal Information in connection with unauthorized access to Defendant's electronic files on or about October 15, 2020. SA ¶ 1.34. The Personal Information consists of information that is or could be used, whether on its own or in combination with information, to identify, locate, or contact a person, and further includes borrowers' names, address, billing information, Social Security Numbers, dates of

---

[2] "Settlement Class Members" is defined in SA ¶¶ 1.38–1.39.

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

birth, driver's license information, and bank account information. SA ¶ 1.28. There is no evidence that any of the Settlement Class Members' Personal Information has been misused or that any identity theft has occurred as a result of the Security Incident.

**B.** **History of the Litigation and Settlement Negotiations**

On March 12, 2021, Plaintiff filed a Class Action Complaint (the "Complaint") in the Superior Court of California, which Defendant removed to the United States District Court for the Northern District of California (the "Court") entitled *Schmitt v. SN Servicing Corporation*, Case No. 3:21-cv-03355-WHO (the "Litigation"). Defendant filed a motion to dismiss the Complaint, and the motion to dismiss was fully briefed. Dkt. 14, 22. The Court entered an order denying in part and granting in part the motion to dismiss, with leave to amend. Dkt. 27.

On August 30, 2021, Plaintiff filed her First Amended Class Action Complaint ("FAC"). Dkt. 34. On September 13, 2021, Defendant moved to dismiss the FAC, which was fully briefed.  On November 12, 2021, the Court entered an order granting in part and denying in part Defendant's motion to dismiss the FAC, with leave to amend. Dkt. 40. On November 23, 2021, Plaintiff filed her Second Amended Class Action Complaint ("SAC"). Dkt. 41.

The SAC asserts claims against Defendant for negligence and for violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200*, et seq*., arising from the Security Incident. Defendant requested an extension of time to answer the SAC so the Parties could attend a mediation. Dkt. 42. The Parties then engaged in an arms' length mediation before the Honorable Herbert Hoffman of Judicate West (the "Mediator") via videoconference on February 17, 2022, through which the basic terms of the Settlement were negotiated and finalized.

**C.** **Terms of the Settlement**

**1.** **The Proposed Settlement Class**

The Settlement Class is defined as "All Persons whose Personal Information was accessed by unknown third parties during the Security Incident." SA ¶ 1.38. Defendant represents that the Settlement Class consists of approximately 285,983 Settlement Class Members. *Id*. The class defined in the SAC is

"All persons whose personal and financial information was compromised in the Data Breach." SA ¶ 85.

The definition of the Settlement Class is worded slightly differently from the class definition proposed in the SAC, as follows: The Settlement Class definition employs the phrase "accessed by unknown third parties during" rather than "compromised in" to achieve precision and clarity. The Settlement Class definition omits a specific reference to "financial information" because the definition of Personal Information includes both personal and financial information. *See* SA ¶ 1.28. The Settlement Class definition substitutes the term "Security Incident" for "Data Breach", but this is not a material modification. These modifications are cosmetic, less argumentative, and are not intended to change the membership of the Class, nor do they.

### 2. Changes to Data Security Practices, and Extension of Credit Monitoring and Identity Theft Protection

On or about July 7, 2021, Defendant secured complimentary credit monitoring and identity theft protection services from myTrueIdentity for all individuals affected by the Security Incident, and encouraged individuals to take advantage of the complimentary services. SA ¶ 2.3. As additional relief provided in this Settlement, and conditioned upon Final Approval, the Parties have agreed that Defendant shall purchase one additional year of myTrueIdentity credit monitoring and identity theft protection services for all Settlement Class Members who choose to accept this benefit on their Claim Form. *Id*. The Settlement does not prohibit a Settlement Class Member who accepted Defendant's offer, in response to the Security Incident, for a free year of identity protection services from also submitting a Settlement Claim in this Settlement. SA ¶ 2.5.

As additional relief provided in the Settlement, Defendant agrees to take reasonable steps to enhance its information security program. SA ¶ 2.6. As part of those efforts, Defendant agrees that it has taken or will take the following steps: Maintain cadence of its penetration tests (including internal and external testing) at least once per quarter; maintain multi-factor authentication for its employees, vendors and borrowers; and provide training to Defendant's security personnel regarding any new or modified security procedure. *Id*.

4

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

### 3.      Settlement Fund

#### a.      Monetary Payments to Settlement Class Members Who Submit a Claim

Defendant will fund a Settlement Fund in the amount of $900,000 which will provide the following benefits: Payments to Settlement Class Members submitting valid Settlement Claims; costs of Claims Administration, the Attorneys' Fees and Expenses Award, if any, to Class Counsel; and the Service Award, if any, to the Settlement Class representative. SA ¶ 2.1.

Settlement Class Members may make a Settlement Claim for an Award (of which there will be two tiers) to be paid from the Settlement Fund. SA ¶ 2.1. Every Settlement Class Member who submits an Approved Claim for an Award is eligible to receive an Award of up to $75.00 (within one of two tiers), regardless of whether he or she experienced any identity theft as a result of the Security Incident. SA ¶ 2.2.1. Tier One awards will initially be set at $75.00 for Settlement Class Members, as identified by Defendant's records, who had their Social Security Number exposed in the Security Incident; and Tier Two awards will initially be set at $25.00 for Settlement Class Members, as identified by Defendant's records, who had their Personal Information, but not their Social Security Number, exposed in the Security Incident. *Id*. These payments are based on an estimated claims rate of 3.7%, after deducting from the Settlement Fund the estimated cost of Claims Administration submitted by the Claims Administrator, and the requested Attorneys' Fees and Expenses Award and Service Award provided for in the Settlement Agreement. The actual amount to be paid for Awards will be calculated further as described in SA ¶ 7.3, including a pro rata increase or reduction depending on the actual claims rate achieved.

#### b.      Service Award to Plaintiff

Class Counsel will request from the Court a Service Award for the Representative Plaintiff in an amount up to and including $5,000, to be paid solely from the Settlement Fund. SA ¶ 9.2. This award is in recognition of Representative Plaintiff's acceptance of any risks that may have attended her suing her home loan servicer, as well as her efforts on behalf of the Settlement Class to obtain the benefits of the Settlement, including her role assisting Class Counsel in the investigation into the facts concerning the

5

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

Security Incident, as well as her participation and feedback for each of the three complaints that were filed in the matter. Plaintiff also participated in the day-long mediation with the Mediator, and had an active role in negotiating and approving the terms of the Settlement.

### c.     Attorneys' Fees and Costs

Class Counsel shall apply to the Court for an award of reasonable attorneys' fees, payable solely from the Settlement Fund, in an amount not to exceed thirty percent (30%) of the Settlement Fund, plus reimbursement of expenses. SA ¶ 9.1. Class Counsel will apply to the Court for such approval and will serve Defendant's counsel with such application no later than 35 days prior to the Objection Deadline. *Id*.

### d.     Residual Distribution

There will be no reversion of Settlement Funds to Defendant.  If there is any balance remaining in the Settlement Fund account 90 days after the Claims Administrator completes the process for stopping payment on any Award checks that remain uncashed, the Parties will return to the Court seeking direction as to the disposition of these funds, including the selection of a *cy pres* recipient, which shall be a 501(c)(3) entity selected by the Parties (subject to Court approval). SA ¶ 7.6.

### e.     Release

The Settlement Class Members obtain considerable benefits in exchange for their release of claims related to the Security Incident. The release encompasses all claims that the Settlement Class Members had, have, or may have against Defendant and/or the Released Persons that result from, arise out of, are based upon, or relate to the Security Incident, that were or could have been alleged in the Litigation, based upon the facts alleged in the SAC. SA ¶ 1.30. The Settlement does *not* release any claims that are unrelated to the Security Incident or the allegations in the Litigation. *Id*.

## III.   ARGUMENT

### A.    Legal Standard

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *McKnight v. Uber Techs., Inc.*, 14-CV-05615-JST, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

6

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

1    "[I]n the context of a case in which the parties reach a settlement agreement prior to class

2    certification, courts must peruse the proposed compromise to ratify both the propriety of the certification

3    and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). First, "the

4    district court must assess whether a class exists," and if so, next "carefully consider whether a proposed

5    settlement is fundamentally fair, adequate, and reasonable, recognizing that it is the settlement taken as a

6    whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* (internal

7    alterations omitted); *see also* Fed. R. Civ. P. 23(e)(2). "Assessing a settlement proposal requires the district

8    court to balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and

9    likely duration of further litigation; the risk of maintaining class action status throughout the trial; the

10   amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the

11   experience and views of counsel; the presence of a governmental participant; and the reaction of the class

12   members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

13   Courts will give preliminary approval of a class action settlement only when the proposed settlement

14   appears to be the product of serious, informed, non-collusive negotiations; has no obvious deficiencies;

15   does not improperly grant preferential treatment to class representatives or segments of the class; and falls

16   within the range of possible approval. *McKnight*, 2017 WL 3427985, at *2.

17        **B.     The Proposed Settlement Class Should Be Certified**

18             **1.     The Class Meets the Requirements of Rule 23(a)**

19        The prerequisites for class certification under Fed. R. Civ. P. 23(a) are numerosity, commonality,

20   typicality, and adequacy. The Settlement Class satisfies these criteria.

21        The Settlement Class consists of 285,983 members, more than enough to render joinder

22   impractical. SA ¶ 1.38. This number is considerably greater than the number of class members alleged in

23   the SAC that was based on publicly-available information at that time. SAC ¶ 31. In addition, the claims

24   of all Settlement Class Members "depend upon a common contention" the determination of which "will

25   resolve an issue central to the validity of each" Settlement Class Member's claims. *Wal-mart Stores, Inc.*

26   *v. Dukes*, 564 U.S. 338, 350 (2011). Here, all claims arise out of the Security Incident. Whether

27                                              7

28
                    Memorandum Of Points And Authorities In Support of
          Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

Defendant's conduct was actionable negligence, and unlawful and unfair conduct under the UCL, are key common issues on which each Settlement Class Member's claims turn. *See In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2017 WL 3730912, at *2 (N.D. Cal. Aug. 25, 2017).

Typicality and adequacy are also satisfied. "It is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017). Defendant's allegedly deficient and unreasonable data security and notification of the Security Incident were directed to all Settlement Class Members, who were all impacted by the same Security Incident. In addition, the proposed Settlement Class representative has no conflicts with the Settlement Class Members, and has participated actively in the Litigation and mediation. Class Counsel are experienced in complex class actions, including customer data breach litigation. *See* Resumes of proposed Class Counsel, attached as Exhibits 2-4 to the Zimmerman Decl.

### 2.     The Class Meets the Requirements of Rule 23(b)

The Court must also determine that the Settlement Class will likely meet one of the subsections of Rule 23(b). Courts have held that common issues predominate for purposes of certifying settlement classes of data breach victims. *See Anthem*, 2017 WL 3730912, at *2; *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020); *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 19-MD-2879, 2022 WL 1396522, at *26 (D. Md. May 3, 2022) (finding Rule 23(b)(3) met on contested motion for class certification in multidistrict consumer data breach class action).

Here, the Settlement Class satisfies Rule 23(b)(3) because common questions predominate over any questions affecting only individual members, and class resolution is superior to other methods for a fair resolution of the controversy. The central issue in the case for each Settlement Class Member concerns Defendant's consumer data collection and security practices, the circumstances and details of the Security Incident and whether the Security Incident occurred as a result of Defendant's inadequate, unreasonable, and unlawful practices. Further, each Settlement Class Member's claims concern Defendant's response to, investigation of, and notification of the Security Incident. Every Settlement Class Member shares these

considerable factual and legal issues in common. Certification for purposes of preliminarily approving the settlement is further supported by the fact that the settlement obviates potential manageability complications of a trial, "for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Because the Settlement Class meets the elements of Rule 23(a) and (b), the Court should certify the Settlement Class preliminarily, and direct that Class Notice be sent to the Settlement Class Members as more fully detailed below.

### C. The *Hanlon* Factors Support Preliminary Approval

#### 1. The Strength of the Plaintiff's Case

Plaintiff is confident that, were the case to be litigated to a conclusion, she would prevail on class certification, trial, and appeal. Plaintiff identifies a number of legal theories and factual bases for recovery on a class basis, including Defendant's alleged failure to exercise reasonable care in implementing industry-standard data security practices in light of the highly sensitive nature and comprehensive scope of the information that Defendant collects, digitizes, and aggregates. *See* SAC ¶¶ 40–46.

Plaintiff's claims have been refined through Court decisions on hotly contested motions to dismiss. The Court denied in part and granted in part both motions. However, the Court has not ruled on whether the SAC cures the defects found by the Court in its ruling on Defendant's motion to dismiss the FAC. There is uncertainty on the extent to which Plaintiff's claims would survive a motion to dismiss the SAC.

#### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff recognizes that success is not assured. And even if Plaintiff succeeds, considerable time, effort, and expenses will have to be expended to achieve such a result. Given that Defendant continues to service loans for many Settlement Class Members, and in doing so maintains their Personal Information, timely resolution of the Litigation is particularly advisable. In particular, Defendant's assurances of adequate data security from this Settlement should provide peace of mind to Settlement Class Members that their Personal Information is not subject to unreasonable risks of additional breaches. And Defendant's agreement in this Settlement to extend the credit monitoring and identity theft protection

Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

provides timely additional relief to Settlement Class Members.

Furthermore, there are complex disputed factual issues concerning data security, Defendant's information systems, and Defendant's response and investigation into the Security Incident, requiring a battle of the experts on damages and liability, involving third-party discovery, and application of these highly technical facts and economic modeling to law. Plaintiff is also mindful that, even though many data breach cases have been brought, most have settled. Relatively few have been litigated through to trial, and there are significant risks and uncertainties concerning the development of the facts and law in this area.

As evidenced by Defendant's motions to dismiss, Defendant is well funded and would be committed to a vigorous defense through trial, judgment, and appeal. This case involves hundreds of thousands of people, technical factual issues, complex and relatively novel legal issues (such as whether Plaintiff may predicate her UCL unlawful claim on the FTC Act and FTC guidelines), and is likely to involve numerous experts and third parties. Achieving finality could take years and would certainly involve considerable expense of the parties and the judicial system. Even then, the Settlement Class could wind up losing the case.

### 3.    The Risk of Maintaining Class Action Status Through Trial

None of the claims have been certified as yet. Even though liability issues tip the scale in favor of class certification, the unique characteristics of data breaches (*e.g.*, the fact that certain injuries arise from anonymous criminal actors) pose challenges to establishing common questions over damages. The Court may, but need not, consider damages questions to be sufficiently individualized to defeat predominance. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("[t]he amount of damages is invariably an individual question and does not defeat class action treatment."); *In re Yahoo!*, 2020 WL 4212811, at *7; *but see Dolmage v. Combined Ins. Co. of Am.*, 14 C 3809, 2017 WL 1754772, at *8 (N.D. Ill. May 3, 2017) (the need for individualized damages calculations contributed to denial of class certification in data breach class action). The trend, however, is changing in that regard, as evidenced by recent class certification decisions in *Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *6 (M.D. Ala. Mar. 17, 2017), and *In re Marriott*, 2022 WL 1396522, at *26. Plaintiff believes there are many ways

to address the various concerns that may arise when considering class certification, and that the law is on her side. Nevertheless, the dearth of direct precedent holding class action status through trial adds to the risks posed by continued litigation. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, 1:17-MD-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped. It would present the parties and the Court with novel questions of law.").

### 4.      The Amount Offered In Settlement

Taking together the monetary and non-monetary relief provided by the Settlement, the Settlement provides substantial relief to Settlement Class Members and compares favorably with other data breach class action settlements. Plaintiff's counsel evaluates that the Settlement achieves a monetary value of $2,930,353 for the Settlement Class, when factoring in the $900,000 Settlement Fund and the additional 1-year of TransUnion credit monitoring and identity theft protection at the estimated 3.7% claims rate.[3]

Out of the Settlement Fund (after deducting the Attorneys' Fees and Expenses Award, the Service Award, and Claims Administration costs), Defendant has agreed to pay Approved Claims under a two-tier structure, subject to proration pursuant to SA ¶ 7.3, as follows: $75 payments for Settlement Class Members who had their Social Security Numbers exposed in the Security Incident; and $25 payments to Settlement Class Members who had their Personal Information, but not their Social Security Numbers, exposed in the Security Incident. SA ¶ 2.2. This two-tier structure recognizes that Social Security Numbers in the hands of criminals poses unique risks and provides a greater award accordingly. *See Schmitt v. SN Servicing Corp.*, 21-CV-03355-WHO, 2021 WL 5279822, at *8 (N.D. Cal. Nov. 12, 2021) (citing Cal. Civ. Code § 1798.81.5(d)(1)(A)(i)). The two-tier structure "treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), by recognizing that those who had their Social Security Numbers exposed to criminals are worse off than those who did not, and they should be compensated for that accordingly. *See Sonic*, 2019 WL 3773737, at *8 (finding that a similar two tier structure awarding higher

---

[3] TransUnion offers its credit monitoring and identity theft protection service for $15.99 per month. Assuming a 3.7% claims rate, and all such claimants elect to obtain the additional one year of credit monitoring and identity theft protection offered by the Settlement, the value of this credit monitoring and identity theft protection to the Settlement Class Members who submit claims is $2,030,353.

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

amounts for class members who suffered out of pocket expenses as a result of the data breach treated class members equitably).

Compared to other data breach class settlements that have earned final approval, the proposed Settlement is laudable. Plaintiff believes that the benefit of this Settlement will be as good, if not better, than the results achieved in other landmark data breach settlements:

- In the Anthem data breach settlement, the defendant agreed to pay $1.46 per class member in a 79 million person class of insureds who had their insurance and health information accessed in a data breach.[4]

- In the Yahoo! data breach settlement, the defendant agreed to pay $117.5 million (approximately $0.61 per class member) in a 194 million person class of account subscribers who had their account information accessed in several data breaches. *In re Yahoo!*, 2020 WL 4212811, at *10.

- In the Home Depot data breach settlement, 53 million consumers who had their payment data or email addresses accessed obtained a $13 million settlement fund, and an additional $6.5 million for internet monitoring services (approx. $0.37 per class member). Settlement agreement at p.6, *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT (ECF No. 181-2 Mar. 7, 2016).

- In the Target data breach settlement, 100 million people who had their payment data accessed by criminals resolved their claims in a settlement establishing a $10 million settlement fund, resulting in a settlement valued at $0.10 per class member. *See In re Target Corp., Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM (ECF No. 358-1 Mar. 18, 2015)).

- The Sonic data breach settlement achieved a $4,325,000 settlement fund for 1.5 million class members ($2.88 per class member), and there was a similar two-tier structure in the

---

[4] *See* Plaintiffs' Memorandum in Support of Preliminary Approval, at pp. 19-20, 5:15-md-02617-LHK (ECF No. 869-5, June 23, 2017).

12

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

amount of $10 for persons who made a purchase using their payment card at a location where the data breach had occurred, and $40 for persons who experienced a fraudulent charge on a card they used at an affected Sonic location. *Sonic*, 2019 WL 3773737, at *2-3.

In comparison, the proposed Settlement pays monetary benefits of $3.15 per class member (*i.e.*, $900,000 settlement fund for 285,983 Settlement Class Members). It offers eligible claimants $75 payments if their Social Security Number was exposed in the Security Incident, and $25 if they only had their Personal Information, but not their Social Security Number, exposed in the Security Incident. Importantly, Settlement Class Members are eligible to submit a Settlement Claim even if they have not suffered any identity theft or fraud.

Class Counsel and the Claims Administrator estimate that the claims rate will be up to approximately 3.7% based on the robust Notice Program that includes direct notice to all Settlement Class Members and the significant monetary payments offered by the Settlement. No supporting documentation is necessary for a Settlement Class Member to obtain an Award. This claim rate, if achieved, would compare favorably to other data breach settlements, such as *Anthem* and *Yahoo!*, where the effective claim rates were 1.8% and 0.6%, respectively. *Anthem*, 327 F.R.D. 299, 329; *Yahoo!*, 2020 WL 4212811, at *20.

### 5. The Extent of Discovery Completed and The Stage of Proceedings

In order to facilitate settlement negotiations, the Parties exchanged informal discovery regarding the Security Incident, the Plaintiff's claims and Defendant's defenses that enabled Class Counsel to conduct a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved the Settlement. Defendant provided Plaintiff with information concerning the class membership, the nature of the Personal Information exposed, the number of Settlement Class Members whose Social Security Numbers were exposed, and other information regarding Defendant's data security practices. Although the Parties did not engage in formal discovery under the Federal Rules of Civil Procedure, the costs, time, and complexity that discovery entails counterbalanced against the excellent

13

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

results of the Settlement favors approval of the Settlement. Class Counsel and the Mediator had sufficient information to evaluate the claims, defenses and damages, and negotiate the Settlement.

### 6.    The Experience and Views of Counsel

Plaintiff's counsel have experience in class action litigation and data breach class actions, specifically. *See* Resumes of Class Counsel, attached as Exhibits 2-4 to the Zimmerman Decl. Plaintiff's counsel have devoted substantial but proportionate time and resources to the analysis, development, and prosecution of this case. It is their opinion that the Settlement represents a good deal for Settlement Class Members. They would not be taking the efforts in the instant motion were it otherwise.

### 7.    The Presence of a Government Participant

No governmental agency is involved in this litigation. But, pursuant to 28 U.S.C. § 1715, notice of this Settlement will be provided to the Attorney General of the United States and Attorneys General of each State, so that they may be heard if they have a position on the Settlement.

### 8.    The Reaction of Class Members to the Proposed Settlement

No class has been certified and no notice has been disseminated. While it is premature to analyze this factor presently, at the time of the final approval hearing, the Court will have the benefit of any objections, opt out requests, and Settlement Class Members' responses. SA ¶¶ 1.19, 3.2.

### 9.    Lack of Collusion Among the Parties

This final factor to consider comes into play if a settlement is negotiated prior to class certification. Collusion is indicated when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; and when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Here, there are no signs of collusion. The Settlement was negotiated with the assistance of the Mediator. Class Counsel request a reasonable attorneys' fee when compared to similar class action settlements at their projected lodestar and up to 30% of the Settlement Fund. Finally, there is no provision

14

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

allowing for the return of unclaimed money in the Settlement Fund to Defendant.

### D.      The Rule 23(e)(2) Factors Support Preliminary Approval

Upon final approval, Rule 23(e) requires the Court to consider whether:

> A.      the class representatives and class counsel have adequately represented the class;
>
> B.      the proposal was negotiated at arm's length;
>
> C.      the relief provided for the class is adequate, taking into account:
>
>> i.      the costs, risks, and delay of trial and appeal;
>>
>> ii.      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> iii.      the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> iv.      any agreement required to be identified under Rule 23(e)(3); and
>
> D.      the proposal treats class members equitably relative to each other.

*Moreno v. Capital Bldg. Maint. & Cleaning Services, Inc.*, 19-CV-07087-DMR, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021) (quoting Fed. R. Civ. P. 23(e)).

### 1.      Plaintiff and Plaintiff's Counsel Have Adequately Represented the Class

As shown above, Plaintiff and Plaintiff's Counsel have adequately represented the Settlement Class by investigating and pursuing their claims, prevailing on two motions to dismiss their claims, and negotiating the Settlement that provides substantial relief for Settlement Class Members. Plaintiff and Class Counsel will continue to represent the Settlement Class in carrying out the terms of the Settlement and taking the steps necessary and appropriate to obtain final approval, judgment, and prosecute any appeals, if any.

### 2.      The Settlement Was Negotiated at Arm's Length

The Settlement was negotiated at arm's length with the benefit of a neutral mediator, the Honorable Herbert Hoffman of Judicate West. As discussed above, there are no indicia of collusion and the benefits provided by the Settlement compare favorably and are in line with other comparable settlements.

15

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

### 3.     The Relief Provided for the Class Is Adequate

The Settlement provides exemplary relief when considering the risks of continued litigation. Although many legal issues have been decided, considerable factual and legal complexity remains, including which claims would survive a motion to dismiss the SAC, discovery into the nature of the Security Incident, the engagement of forensic and damages experts, and inquiry into investigations by governmental authorities. From a procedural standpoint, there is a substantial likelihood of considerable motion practice supporting class certification, potential summary judgment motions, motions regarding the testimony of experts, and the like, as well as the time, risks, and costs of litigation and trial. Given the relative novelty of a litigated judgment in a data breach class action, there would almost certainly be an appeal, which would involve significantly more delay, costs, and efforts.

The Settlement uses generally accepted methods for processing claims and distributing relief to eligible claimants. SA ¶¶ 2.4, 2.5. Settlement Class Members will be able to submit claims electronically using the webform available on the Settlement website identified on the Summary Notice, and also by mail. SA ¶ 4.3.3; SA Exhibit A. Because Settlement Class Members can be readily identified, claimants need not submit evidentiary support or documentation to prove membership or to receive a payment.

For each Settlement Claim submitted, the Claims Administrator approved by the Court, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; and (2) the claimant has provided all information required to complete the Claim Form by the Claims Deadline. SA ¶ 7.2. If the Claims Administrator identifies an incomplete or unsigned Claim Form, the Claims Administrator shall request additional information and give the claimant 14 days to cure the defect before rejecting the Settlement Claim. SA ¶¶ 7.2.1, 7.2.2.

Either 90 days after the Effective Date or 30 days after all disputed claims have been resolved (whichever occurs later), the Claims Administrator will mail Award checks or send funds electronically in an electronic payment format (such as Venmo, Zelle, PayPal, etc.) for Approved Claims. SA ¶ 7.5. For any checks that are returned as undeliverable, the Claims Administrator will conduct a skip trace to attempt to locate a more recent address. *Id.*

Any Attorneys' Fees and Expenses Award must be approved by the Court upon an application filed by Class Counsel. Class Counsel do not presume to be entitled to such an award at this time and any award must be justified and approved by the Court. However, for purposes of analysis at the preliminary approval stage, Plaintiff's counsel address their projected fee request, which they estimate in the amount of $270,000, to be paid from the Settlement Fund. SA ¶ 9.1. Class Counsel will apply to the Court for such approval and will serve Defendant's counsel with such application no later than 35 days prior to the Objection Deadline. *Id*. The Claims Administrator will pay to Class Counsel the amount awarded by the Court within 10 days after the Court executes an order granting the award. SA ¶ 9.3. Importantly, the finality or effectiveness of the Settlement shall not depend upon the Court awarding any particular award to Class Counsel. SA ¶ 9.4.

### 4. The Proposal Treats Class Members Equitably Relative To Each Other

In addition to the non-monetary relief provided by Defendant in the form of enhanced data security practices, and the extension of the credit monitoring and identity theft protection available to all Settlement Class Members, the two-tier structure of the monetary Awards under the Settlement enhances the equity of the Settlement. The Settlement recognizes that those Settlement Class Members who had their Social Security Numbers exposed in the Security Incident are potentially worse off than those who only had their Personal Information, other than Social Security Numbers, exposed. The Court's orders on Defendant's motions to dismiss endorses this distinction (Dkt. 27, pp. 8-9; Dkt. 40, p. 13), and the Settlement takes that into account by providing a $75 payment to Settlement Class Members whose Social Security Numbers were exposed in the Security Incident, and $25 payment to Settlement Class Members whose Social Security Numbers were not exposed.

### E. The Settlement Complies With the Northern District's Procedural Guidance for Class Action Settlements

The Settlement complies with the Northern District's Procedural Guidance for Class Action Settlements. The Guidance directs plaintiffs to include the following information in their motion for preliminary approval.

17

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement

1. **If a Litigation Class Has Not Been Certified, Any Differences Between The Settlement Class And The Class Proposed In The Operative Complaint And An Explanation As To Why The Differences Are Appropriate In The Instant Case**

The differences between the Settlement Class and the class proposed in the SAC are cosmetic only. They are not intended to change membership, but only to facilitate the settlement. "Data Breach" is changed to "Security Incident," but refers to same event described in the SAC. "Personal and financial information" is changed to "Personal Information," which is defined in the Settlement Agreement to include personal and financial information, so there is no effective change to the scope of the class.[5] Lastly, "compromised in" is changed to "accessed by unknown third parties during" to achieve precision and clarity. The changes are appropriate because they enhance clarity and facilitate the Settlement. No member of the proposed class in the SAC is excluded from membership from the Settlement Class by virtue of these textual adjustments.

2. **If a Litigation Class Has Not Been Certified, Any Differences Between the Claims to Be Released and the Claims in the Operative Complaint and an Explanation as to Why the Differences Are Appropriate in the Instant Case**

The Ninth Circuit allows federal courts to release all claims that are "based on the identical factual predicate as that underlying the claims in the settled class action." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Here, the Settlement's release is co-extensive with the claims in the SAC in that the release covers only claims that were or could have been brought in the Litigation relating to the Security Incident. SA ¶¶ 1.30–1.31. The release expressly carves out from its scope "any claims that are not related to or that do not arise in connection with the Security Incident or the allegations, facts or circumstances described in the Litigation and/or SAC. *Id.*

---

[5] "Personal Information" means information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, and further includes borrowers' names, address, billing information, social security number, date of birth, drivers' license information, and bank account information." SA ¶ 1.28.

### 3. The Anticipated Class Recovery Under the Settlement, the Potential Class Recovery if Plaintiffs had Fully Prevailed on each of their Claims, and an Explanation of the Factors Bearing on the Amount of the Compromise

The anticipated class recovery under the Settlement includes the Settlement Fund of $900,000 and an additional one-year extension of the myTrueIdentity free credit monitoring and identity theft protection for each Settlement Class Member who opts for such coverage on their Claim Form. Given the robust Class Notice program and substantial monetary benefits of the Settlement, Plaintiff's Counsel and the Claims Administrator estimate a claims rate up to approximately 3.7%. At a 3.7% claims rate, the anticipated class recovery attributable to credit monitoring and identity theft protection for one year is approximately $2 million (3.7% claims rate x 285,983 Settlement Class Members x $15.99 per month x 12 months = 2,030,353). Adding these benefits together, the anticipated class recovery under the Settlement is approximately $2,930,353, less estimated costs of Claims Administration, the requested Attorneys' Fees and Expenses Award, reimbursement of litigation expenses, and any Service Award.

There is uncertainty regarding what the Settlement Class would recover if they prevail on their claims. Damages experts would be needed to provide that opinion. Plaintiff believes that she would be able to establish that there is a well-supported legal and factual basis supporting a class recovery in this case. However, there is little historical data of data breach class actions achieving class certification, let alone going to trial. It is the novelty of litigated data breach class actions that counsels in favor of approval of this Settlement.

### 4. The Proposed Allocation Plan for the Settlement Fund

Plaintiff's counsel's good faith estimates are that the $900,000 Settlement Fund will be allocated as follows: $145,925 is the estimated cost of notice and administration, requested attorneys' fees of $270,000 plus reimbursement of $7,427.71 in litigation expenses, and a requested Service Award to the Plaintiff of $5,000. The remaining $471,647 in the net Settlement Fund would be distributed as Awards for the Approved Claims. At the estimated claims rate of 3.7%, Plaintiff's counsel projects that claims approved under Tier One will be paid in the amount of $25.11, and claims approved under Tier Two will be paid in the amount of $75.32. The individual payments will be increased or reduced pro rata to the

1   extent the claims rate deviates from this projection. There will be no reversion to Defendant of any

2   unclaimed money in the Settlement Fund.

3          **5.     If There Is a Claim Form, an Estimate of the Number and/or
                     Percentage of Class Members Who Are Expected to Submit a Claim in
4                    Light of the Experience of the Selected Claims Administrator and/or
                     Counsel From Other Recent Settlements of Similar Cases, the Identity
5                    of the Examples Used for the Estimate, and the Reason for the Selection
                     of Those Examples**

6          Taking into account the substantial monetary payments to claimants, the robust Class Notice

7   campaign, and outcomes in prior similar settlements (namely, *Sonic*), Class Counsel estimates that the

8   claims rate should approach 3.7%. In *Sonic*, where the settlement employed a similar two-tier monetary

9   payment claim structure ($10 for Category One, and $40 for Category Two), the claims rate was 3.9%. In

10  other data breach settlements, the claims rate was lower. In *In re Anthem*, 327 F.R.D. at 329, the court

11  reported that the claims rate was 1.8%. In *In re Yahoo!*, the claims rate reported by the court at final

12  approval was 0.6%. *In re Yahoo*, 2020 WL 4212811, at *20.

13         Here, the proposed Claims Administrator and Class Counsel estimate a claims rate that should

14  approach 3.7%, based on their recent settlements and experience. Given the size of the Settlement Class,

15  the active relationship that many Settlement Class Members have with Defendant, the direct notice under

16  the Notice Program, and the incentives to submit a Claim Form for substantial monetary payments and

17  identity theft protection, a claims rate up to 3.7% is within reason. It is comparable to the claims rate in

18  *Sonic*, and Plaintiff's counsel was co-class counsel in that case.

19         **6.     In Light of Ninth Circuit Case Law Disfavoring Reversions, Whether
                    and Under What Circumstances Money Originally Designated for
20                  Class Recovery Will Revert to any Defendant, the Potential Amount or
                    Range of Amounts of any Such Reversion, and an Explanation as to
21                  Why a Reversion Is Appropriate in the Instant Case**

22         The Settlement Fund will be distributed pro rata to all eligible claimants, so that the claimants will

23  receive the entirety of the Settlement Fund after payment of notice and administrative costs, attorneys'

24  fees and expenses, and the Service Award. SA ¶¶ 7.3.1, 7.3.2. If there is any balance remaining in the

25  Settlement Fund after all Approved Claims are paid (such as uncashed checks), then the remainder (which

26  is expected to be a very small amount) will be paid to a *cy pres* recipient approved by the Court. SA ¶ 7.6.

27                                                    20

28

1   In no event shall any money from the Settlement Fund be paid back to Defendant.

2              **7.**    **Settlement Administration**

3         The Parties request that the Court appoint Angeion Group, LLC ("Angeion") as the Claims

4   Administrator under the Settlement to disseminate Class Notice, process Settlement Claims received from

5   Settlement Class Members, and process payments of Approved Claims. SA ¶¶ 1.7–1.8.

6         The Parties solicited bids from two industry leading class settlement administrators—Angeion and

7   KCC Class Action Services. Ultimately, Angeion was selected after submitting numerous proposals under

8   different scenarios because Angeion's proposal was deemed to be the best notice practicable at the lowest

9   price (*i.e.*, approx. $47,000 less than the KCC estimate).

10        The Parties considered a proposal from Angeion where each Settlement Class Member was sent

11   notice by First Class mail. That proposal was not preferred because it was approximately $39,000 more

12   expensive and would be inconsistent with many Settlement Class Members' documented preference to

13   receive electronic billing from Defendant by email. *See* SA ¶ 4.3.1. The advisory committee notes to the

14   2018 amendments to Rule 23 observe that in certain circumstances, email notice may be the "most

15   promising" method of notice. Plaintiff's counsel submit that such is the case for Active Borrowers who

16   are enrolled in electronic billing and do all of their business with Defendant electronically. In addition,

17   Postcard Notice by First Class U.S. mail will be sent to Inactive Borrowers, and a Summary Notice will

18   be mailed to Active Borrowers who are not enrolled in electronic billing. SA ¶¶ 4.3.1–4.3.2. Angeion's

19   proposal assumes they will send approximately 113,000 email notices, and approximately 172,000 mailed

20   notices. By sending a considerable portion of direct notice electronically—consistent with Settlement

21   Class Members' wishes—the Parties are able to keep the costs of Claims Administration to an estimated

22   $145,925. Because the costs of Claims Administration come out of the Settlement Fund, the savings can

23   be passed on to Settlement Class Members submitting Approved Claims.

24        Over the last two years, Angeion has administered class settlements in cases litigated by Class

25   Counsel, and Class Counsel have been highly satisfied with their work. In addition, Angeion has been

26   appointed as the settlement administrator in numerous class settlements. *See, e.g., Cottle v. Plaid Inc.*, 340

27

28                                 Case No. 3:21-cv-03355-WHO

F.R.D. 356, 382 (N.D. Cal. 2021) (appointing Angeion as settlement administrator in preliminary approval order); *Myers v. Loomis Armored US, LLC*, 2020 WL 1815902, at *7 (W.D.N.C. Apr. 9, 2020) (granting final approval of class action settlement).

### 8.    Notice, Opt-Outs, and Objections

Before a class settlement can be finally approved under Rule 23(e), "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For class settlements certified under Rule 23(b)(3), the notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Notice Program consists of direct notice by first class mail or email, and a settlement website. SA ¶¶ 4.3.1–4.3.3. The type of Class Notice that Settlement Class Members receive depends on whether they are Active Borrowers or Inactive Borrowers. Defendant will send a Summary Notice and Claim Form to all Settlement Class Members who are Active Borrowers via (1) First Class U.S. Mail, in an envelope, along with the Active Borrowers' monthly statement for the applicable time frame, or (2) email to Active Borrowers that are enrolled in electronic billing. SA ¶ 4.3.1. The Claims Administrator shall send Postcard Notice to all Settlement Class Members who are Inactive Borrowers via First Class U.S. Mail, postage pre-paid. SA ¶ 4.3.2. Within 20 days after sending such Postcard Notice, the Claims Administrator shall undertake reasonable efforts to confirm the address, and to resend notice, for any Settlement Class Members for which the Claims Administrator receives returned mail from the U.S. Postal Service indicating that the initial mailing of Summary Notice or Postcard Notice was not delivered. SA ¶ 4.3.2.

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Here, the Parties have considered the factors set forth in the Guidance and drafted notice documents that include the suggested language set forth therein, including contact information of Class Counsel, the website address where information about the Litigation and Settlement

22

can be found and Claim Forms submitted, and instructions on how to access the case docket via PACER or in person. *See* SA Exhibits A, B, E, F. The notice will provide the date of the Final Approval Hearing and will clearly state that the date may change without further notice to the Settlement Class. *Id.* Angeion and Plaintiff's counsel anticipate that the Notice Program will be effective, meet the standard for best practical notice under the circumstances, and is estimated to achieve a claims rate up to approximately 3.7%—an exemplary claims rate for data breach class action settlements.

In accordance with the Guidance, the Class Notice documents clearly advise Settlement Class Members of the deadlines to submit claims, opt out, or serve an objection. *See* SA Exhibits A, B, E, F. The Class Notice documents clearly explain the methods to opt out and object and the consequences of opting out, including the language suggested by the Guidance. *Id.*

### 9.    Attorneys' Fees, Incentive Awards, and Cy Pres Awardees

Under the Guidance, the preliminary approval motion in a common fund case such as this should include information about the fees that Class Counsel intend to request and their lodestar calculation, as well as the relationship between the amount of the award and the amount of the common fund.

In a common fund class action settlement, the Court has discretion to employ either the lodestar method or the percentage-of-recovery method. *In re Bluetooth Headset*, 654 F.3d at 942. At this time, Class Counsel intend to seek a fee in the amount of $270,000, or 30% of the Settlement Fund. This percentage is even less when including the value of the additional credit monitoring and identity theft protection provided to Settlement Class Members in the Settlement.[6] SA ¶ 2.3. The fee request does not incorporate the value of Defendant's information security enhancements provided in the Settlement. SA ¶ 2.6. Although 25% of the recovery is the presumptively reasonable benchmark, courts in this District have "referred to the 'many cases in this circuit that have granted fee awards of 30% or more.'" *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 4:14-MD-2541-CW, 2017 WL 6040065, at *2 (N.D. Cal. Dec. 6, 2017).

---

[6] A $270,000 fee is only 9% of the $2,930,353 monetary relief provided to Settlement Class Members at a 3.7% claims rate and including the value of the extra one year of credit monitoring and identity theft protection.

The requested fee award very likely will be justified by the lodestar method and the percentage-of-recovery method. Class Counsel projects that the requested fee will approximate their lodestar after they have carried out their duties under the Settlement, including overseeing notice and claims administration, and preparing all of the necessary papers for achieving final approval of the Settlement. Class Counsel spent 408 hours on the Litigation to date, Class Counsel's lodestar is $223,998 to date, and the *present* lodestar multiplier would be 1.21.

Even if Class Counsel does not spent *any* additional time on the Litigation after this filing (which is not the case), their multiplier would still be supported by case law. For example, in *Yahoo!*, the court awarded class counsel a fee that carried a 1.15 positive multiplier. 2020 WL 4212811, at *37. In *Anthem*, the court awarded class counsel a fee that carried a positive multiplier "slightly over 1.0." *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 WL 3960068, at *27 (N.D. Cal. Aug. 17, 2018).

In addition, Class Counsel will request their reasonable out-of-pocket expenses in their application for attorneys' fees and will provide an itemized list of such for the Court's review. At this time, those expenses total $7,427.71.

Class Counsel will also request a $5,000 Service Award for Plaintiff as the Settlement Class representative. Here, Plaintiff assisted Class Counsel in the investigation and commencement of this Litigation, reviewed numerous pleadings and motion papers, attended and participated in the mediation, and scrutinized and approved the Settlement in consultation with Class Counsel. For her efforts on behalf of the Settlement Class, she should be awarded the Service Award, which is in line with incentive awards approved by the Ninth Circuit. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).

Any *cy pres* award is contingent upon whether there are any uncashed Award checks. The Claims Administrator will distribute any amounts remaining in the Settlement Fund to a *cy pres* recipient that will be agreed upon by the Parties and after obtaining approval from the Court. SA ¶ 7.6.

### 10.    Timeline and CAFA Notice

The Settlement provides that CAFA notice under 28 U.S.C. § 1715 will be provided by the Claims

Administrator. SA ¶ 4.3.4. The Settlement proposes a Claims Deadline "that is the 100th day after the date of entry of the Preliminary Approval Order." SA ¶ 1.9. The Settlement proposes that the Objection Deadline and the Opt Out Date be 75 days after entry of the Preliminary Approval Order. SA ¶¶ 1.22, 1.24. Class Counsel will submit their application for attorneys' fees, costs, and expenses and the Settlement Class representative's Service Award 35 days prior to the Objection Deadline. SA ¶ 9.1. A complete Settlement timeline is attached as Exhibit 5 to the Zimmerman Decl.

### 11.    Past Distributions

The Guidance requires that Plaintiff's counsel provide certain data comparing the proposal in this case with a prior class action settlement they were involved in. Plaintiff's counsel choose *In re Sonic Data Breach*, which is a recent data breach class action (with a similar two-tier claims payment structure) that achieved final approval from the United States District Court for the Northern District of Ohio. Plaintiffs' counsel were co-class counsel in the *Sonic* case.

|  | SN Servicing (this case) | In re. Sonic Data Breach |
|---|---|---|
| Total settlement fund | $900,000 | $4,325,000 |
| Total number of class members | 285,983 | 1,500,000 |
| Total number of class members to whom notice was sent | 285,983 | 1,500,000 |
| Method(s) of notice | U.S. mail and email | In-store, internet, print publication, press release, and banner ads |
| Number and percentage of claim forms submitted | 10,581, or 3.7% of Settlement Class (estimated) | 59,958, or 3.9% of class |
| Average recovery per class member or claimant | $3.15 per class member, $44.57 per claimant[7] | $2.88 per class member, |

---

[7] 6,479 Tier One claims at $25.11 each, and 4,102 Tier Two claims at $75.32 each (at the estimated 3.7% claims rate).

| | | $38.74 per claimant[8] |
|---|---|---|
| Amounts distributed to each cy pres recipient | Contingent and expected to be nominal | None provided in settlement |
| Administrative costs | $145,925 (estimated) | $206,674 |
| Attorneys' fees and costs | $270,000 in fees, and $7,427.71 in costs | $1,297,500 in fees (*i.e.*, 30% of the settlement fund), and $209,536 in costs |

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court enter an order granting preliminary approval of the Settlement (draft Preliminary Approval Order attached as SA Exhibit D), and for such other relief as the Court deems just and appropriate under the circumstances.


Dated: June 17, 2022

By: /s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr. (pro hac vice)
tom@attorneyzim.com
Sharon Harris (pro hac vice)
sharon@attorneyzim.com
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile

Marc E. Dann (pro hac vice)
Brian D. Flick (pro hac vice)
DANNLAW
15000 Madison Avenue
Lakewood, Ohio 44107
(216) 373-0539 telephone
(216) 373-0536 facsimile
notices@dannlaw.com

Mitchell Chyette
125 12th Street, Suite 100-BALI
Oakland, CA 94607-3699
(510) 388-3748

---

[8] 48,956 Category One claims at $24.99 each, and 11,002 Category Two claims at $99.95 each.

(510) 680-3760 facsimile
mitch@chyettelaw.com

Counsel for Plaintiff and the putative Class

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement