1  Thomas A. Zimmerman, Jr. (pro hac vice)
   tom@attorneyzim.com
2  ZIMMERMAN LAW OFFICES, P.C.
   77 W. Washington Street, Suite 1220
3  Chicago, Illinois 60602
   (312) 440-0020 telephone
4  (312) 440-4180 facsimile
   firm@attorneyzim.com
5
   [Additional Counsel listed on subsequent page]
6
   Attorneys for Plaintiff Desiree Schmitt
7  and the Putative Class

8

9                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
10                   **SAN FRANCISCO DIVISION**

11 DESIREE SCHMITT, individually, and on behalf    Case No. 3:21-cv-03355-WHO
   of all others similarly situated,
12                                                 District Judge William H. Orrick
            Plaintiff,
13
      v.
14                                                 **PLAINTIFF'S NOTICE OF MOTION AND**
   SN SERVICING CORPORATION, an Alaska           **UNOPPOSED MOTION FOR FINAL**
15 Corporation,                                   **APPROVAL OF CLASS ACTION**
                                                 **SETTLEMENT; MEMORANDUM OF POINTS**
16          Defendant.                           **AND AUTHORITIES IN SUPPORT THEREOF**

17                                                 Date:    November 16, 2022
                                                 Time:    2:00 p.m.
18                                                 Room:

19                                                 Complaint filed: March 12, 2021
                                                 Trial Date: None Set
20

21

22

23

24

25

26

27                                  1
                                                        Case No. 3:21-cv-03377-WHO
28                        Plaintiff's Notice of Motion and
                   Motion for Final Approval of Class Action Settlement

**NOTICE OF MOTION AND**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**PLEASE TAKE NOTICE** that on November 16, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiff Desiree Schmitt ("Plaintiff") shall appear before the Honorable William H. Orrick of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, via video conference, at the following link:

https://cand-uscourts.zoomgov.com/j/1611812513?pwd=anFJWCtUaHVhY2RYLzNtVDMxU3NVQT09

Webinar ID: 161 181 2513; Password: 478314

and shall there and then present Plaintiff's Motion for Final Approval of Class Action Settlement.

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Jenny Shawver Re: Notice & Administration, and materials attached as exhibits thereto.

Date: November 2, 2022                          /s/ Thomas A. Zimmerman, Jr.
                                                Thomas A. Zimmerman, Jr.

                                                *Attorney for Plaintiff*
                                                DESIREE SCHMITT

2

Case No. 3:21-cv-03377-WHO
Plaintiff's Notice of Motion and
Motion for Final Approval of Class Action Settlement

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ...................................................................1

I.    INTRODUCTION ................................................................................................2

II.   BACKGROUND ...................................................................................................3

    A.    Plaintiff's Claims ......................................................................................3

    B.    History of the Litigation and Settlement Negotiations .............................3

    C.    Terms of the Settlement ............................................................................4

        1.    The Proposed Settlement Class...................................................4

        2.    Changes to Data Security Practices, and Extension of Credit
             Monitoring and Identity Theft Protection ....................................4

        3.    Settlement Fund ..........................................................................5

             a.    Monetary Payments to Settlement Class Members
                Who Submit a Claim.......................................................5

             b.    Service Award to Plaintiff .............................................5

             c.    Attorneys' Fees and Costs .............................................6

             d.    Residual Distribution .....................................................6

             e.    Release ...........................................................................6

    D.    Notice Implementation...............................................................................6

    E.    Reaction of the Settlement Class ..............................................................7

III.  ARGUMENT.........................................................................................................7

    A.    The Settlement Class Should Be Certified For the Purpose of
        Entering Judgment on the Settlement .......................................................7

        1.    The Settlement Class Meets the Requirements of Rule 23(a) .................7

        2.    The Settlement Class Meets the Requirements of Rule 23(b) ....................8

    B.    The Settlement Should Be Finally Approved ...........................................9

        1.    District Guidance Analysis ......................................................10

i

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

2.      The Settlement Is Adequate in Light of the
Costs, Risks, and Delay of Trial ...................................................13

3.      The Method for Distributing Relief Is Adequate......................................14

4.      The Settlement Is Adequate in Light of the Proposed
Award of Attorney's Fees...........................................................14

5.      The Proposal Treats Class Members Equitably Relative to Each Other ...15

6.      The *Hanlon* Factors Support Final Approval.............................................15

7.      The Presence of a Government Participant...............................................16

8.      The Reaction of Class Members to the Proposed Settlement ...................16

IV.     CONCLUSION.........................................................................................16

## **TABLE OF AUTHORITIES**

**_Cases_**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ...........................................................................................................9

*In re Anthem, Inc. Data Breach Litig.*,
   15-MD-02617-LHK, 2017 WL 3730912 (N.D. Cal. Aug. 25, 2017) ...................................8

*In re Bluetooth Headset Products Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................................16

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   19-MD-2879, 2022 WL 1396522 (D. Md. May 3, 2022) ...................................................8

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .......................................13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ...................................8

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ............................................................................................8

*Moreno v. Capital Bldg. Maint. & Cleaning Services, Inc.*,
   19-CV-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021) ...................................9

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................16

*Wal-mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...........................................................................................................8

**_Statutes, Regulations, and Rules_**

28 U.S.C. § 1715 ......................................................................................................................16

Fed. R. Civ. P. 23(a) ..............................................................................................................7, 8

Fed. R. Civ. P. 23(b)(3) ..............................................................................................................8

Fed. R. Civ. P. 23(e)(2) ........................................................................................................9, 16

N.D. Cal., *Procedural Guidance for Class Action Settlements* (Dec. 5, 2018) ...........................10

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the Settlement Class meets the standards under Rule 23(a), (b)(3), and (e)(1)(B)(ii) of the Federal Rules of Civil Procedure to be certified for purposes of judgment on the Settlement;

2.  Whether the Settlement meets the standard under Rule 23(e)(2) of the Federal Rules of Civil Procedure as fair, reasonable, and adequate.

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

# I.    INTRODUCTION

After hotly contested litigation, including repeated rounds of motion practice, in which Plaintiff's theories and claims were tested, Plaintiff Desiree Schmitt ("Plaintiff") and Defendant SN Servicing Corp. ("Defendant") have reached an arms-length class action settlement that, if approved, would provide considerable benefits, including money payments and credit monitoring and identity theft protection to the Settlement Class, as well as assurances from Defendant to maintain adequate data security practices.

On July 8, 2022, the Court entered an Order Granting Preliminary Approval of the Settlement ("Preliminary Approval Order," Dkt. 53). Angeion Group LLC ("Claims Administrator" or "Angeion")––the Court-appointed Claims Administrator—in conjunction with Defendant, carried out the notice plan subsequent to the Court's Preliminary Approval Order. *See* Declaration of Jenny Shawver Re: Notice & Administration ("Shawver Decl."), attached hereto as Exhibit 1. Angeion and Defendant report a robust notice program that satisfies Fed. R. Civ. P. 23 and due process as the best notice practicable under the circumstances. Notice was directed to Settlement Class Members through email and direct mail. Shawver Decl. ¶¶ 7–11. Angeion established a Settlement Website and a toll-free phone number that provided additional information to Settlement Class Members about their rights, the litigation, and the Settlement. Shawver Decl. ¶¶ 12–13.

The Settlement Class Members have engaged favorably with the Settlement. The response is a testament to the robustness of the notice program and the fairness of the Settlement. The Settlement Class Members have reacted favorably to the Settlement, submitting 104,413 timely claims for payment, while submitting only 1 request for exclusion and not a single objection. Shawver Decl. ¶¶ 14–16.

As set forth below, the Settlement meets the standard for final approval as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e). Accordingly, Plaintiff requests that the Court certify the Settlement Class for purposes of entering judgment on the Settlement and finally approve the Settlement as fair, reasonable, and adequate. Attached hereto as Exhibit 2 is a proposed order granting final approval of the Settlement Agreement.

## II.     BACKGROUND

### A.     Plaintiff's Claims

Plaintiff and proposed Settlement Class Members[1] formerly held or currently hold home loans that are or were serviced by Defendant. In January 2021, Defendant sent by U.S. mail a notification letter to Plaintiff and Settlement Class Members notifying them that third parties may have accessed Defendant's customers' Personal Information in connection with unauthorized access to Defendant's electronic files on or about October 15, 2020. Settlement Agreement ("SA") ¶ 1.34 (Dkt. 50-1). The Personal Information consists of information that is or could be used, whether on its own or in combination with information, to identify, locate, or contact a person, and further includes borrowers' names, address, billing information, Social Security Numbers, dates of birth, driver's license information, and bank account information. SA ¶ 1.28. There is no evidence that any of the Settlement Class Members' Personal Information has been misused or that any identity theft has occurred as a result of the Security Incident.

### B.     History of the Litigation and Settlement Negotiations

On March 12, 2021, Plaintiff filed a Class Action Complaint (the "Complaint") in the Superior Court of California, which Defendant removed to the United States District Court for the Northern District of California (the "Court") entitled *Schmitt v. SN Servicing Corporation*, Case No. 3:21-cv-03355-WHO (the "Litigation"). Defendant filed a motion to dismiss the Complaint, and the motion to dismiss was fully briefed. Dkt. 14, 22. The Court entered an order denying in part and granting in part the motion to dismiss, with leave to amend. Dkt. 27.

On August 30, 2021, Plaintiff filed her First Amended Class Action Complaint ("FAC"). Dkt. 34. On September 13, 2021, Defendant moved to dismiss the FAC, which was fully briefed.  On November 12, 2021, the Court entered an order granting in part and denying in part Defendant's motion to dismiss the FAC, with leave to amend. Dkt. 40. On November 23, 2021, Plaintiff filed her Second Amended Class Action Complaint ("SAC"). Dkt. 41.

The SAC asserts claims against Defendant for negligence and for violation of the Unfair

---

[1] "Settlement Class Members" is defined in SA ¶¶ 1.38–1.39 and the Court's Preliminary Approval Order, ¶ 5.

Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., arising from the Security Incident. Defendant requested an extension of time to answer the SAC so the Parties could attend a mediation. Dkt. 42. The Parties then engaged in an arms' length mediation before the Honorable Herbert Hoffman (ret.) of Judicate West (the "Mediator") via videoconference on February 17, 2022, through which the basic terms of the Settlement were negotiated and finalized.

### C.    Terms of the Settlement

#### 1.    The Proposed Settlement Class

The Settlement Class is defined as "All Persons whose Personal Information was accessed by unknown third parties during unauthorized access to Defendant's electronic files on or about October 15, 2020." Preliminary Approval Order, ¶ 5. Defendant represents that the Settlement Class consists of approximately 285,983 Settlement Class Members. SA ¶ 1.38. The Class List contains 285,999 records. Shawver Decl. ¶ 5.

#### 2.    Changes to Data Security Practices, and Extension of Credit Monitoring and Identity Theft Protection

On or about July 7, 2021, Defendant secured complimentary credit monitoring and identity theft protection services from myTrueIdentity for all individuals affected by the Security Incident, and encouraged individuals to take advantage of the complimentary services. SA ¶ 2.3. As additional relief provided in this Settlement, and conditioned upon Final Approval, the Parties have agreed that Defendant shall purchase one *additional* year of myTrueIdentity credit monitoring and identity theft protection services for all Settlement Class Members who choose to accept this benefit on their Claim Form. *Id*. The Settlement does not prohibit a Settlement Class Member who accepted Defendant's offer, in response to the Security Incident, for a free year of identity protection services from also submitting a Settlement Claim in this Settlement. SA ¶ 2.5.

As *additional* relief provided in the Settlement, Defendant agrees to take reasonable steps to enhance its information security program. SA ¶ 2.6. As part of those efforts, Defendant agrees that it has taken or will take the following steps: Maintain cadence of its penetration tests (including internal and external testing) at least once per quarter; maintain multi-factor authentication for its employees, vendors

4

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

and borrowers; and provide training to Defendant's security personnel regarding any new or modified security procedure. *Id.*

### 3.    Settlement Fund

#### a.    Monetary Payments to Settlement Class Members Who Submit a Claim

Defendant will fund a Settlement Fund in the amount of $900,000 which will provide the following benefits: Payments to Settlement Class Members submitting valid Settlement Claims; costs of Claims Administration, the Attorneys' Fees and Expenses Award, if any, to Class Counsel; and the Service Award, if any, to the Settlement Class representative. SA ¶ 2.1.

Settlement Class Members may make a Settlement Claim for an Award (of which there will be two tiers) to be paid from the Settlement Fund. SA ¶ 2.1. Every Settlement Class Member who submits an Approved Claim for an Award is eligible to receive an Award of up to $75.00 (within one of two tiers), regardless of whether he or she experienced any identity theft as a result of the Security Incident. SA ¶ 2.2.1. Tier One awards will initially be set at $75.00 for Settlement Class Members, as identified by Defendant's records, who had their Social Security Number exposed in the Security Incident; and Tier Two awards will initially be set at $25.00 for Settlement Class Members, as identified by Defendant's records, who had their Personal Information, but not their Social Security Number, exposed in the Security Incident. *Id.* The actual amount of the payments that will be paid for Awards will be calculated further as described in SA ¶ 7.3, including a pro rata increase or reduction depending on the actual timely and valid claims rate achieved.

#### b.    Service Award to Plaintiff

On August 17, 2022, Plaintiff filed her Motion for Attorney Fees' and Costs and Service Award in which she requested from the Court a Service Award in an amount up to and including $5,000, to be paid solely from the Settlement Fund. SA ¶ 9.2. This award is in recognition of Representative Plaintiff's acceptance of any risks that may have attended her suing her home loan servicer, as well as her efforts on behalf of the Settlement Class to obtain the benefits of the Settlement, including her role assisting Class

5

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

Counsel in the investigation into the facts concerning the Security Incident, as well as her participation and feedback for each of the three complaints that were filed in the matter. Plaintiff also participated in the day-long mediation with the Mediator, and had an active role in negotiating and approving the terms of the Settlement.

### c.    Attorneys' Fees and Costs

On August 17, 2022, Plaintiff filed the application for an award of reasonable attorneys' fees, payable solely from the Settlement Fund, in an amount not to exceed thirty percent (30%) of the Settlement Fund, plus reimbursement of expenses. SA ¶ 9.1.

### d.    Residual Distribution

There will be no reversion of Settlement Funds to Defendant. If there is any balance remaining in the Settlement Fund account 90 days after the Claims Administrator completes the process for stopping payment on any Award checks that remain uncashed, the Parties will return to the Court seeking direction as to the disposition of these funds, including the selection of a *cy pres* recipient, which shall be a 501(c)(3) entity selected by the Parties (subject to Court approval). SA ¶ 7.6.

### e.    Release

The Settlement Class Members obtain considerable benefits in exchange for their release of claims related to the Security Incident. The release encompasses all claims that the Settlement Class Members had, have, or may have against Defendant and/or the Released Persons that result from, arise out of, are based upon, or relate to the Security Incident, that were or could have been alleged in the Litigation, based upon the facts alleged in the SAC. SA ¶ 1.30. The Settlement does *not* release any claims that are unrelated to the Security Incident or the allegations in the Litigation. *Id.*

## D.    Notice Implementation

The Settlement designated Angeion as the Claims Administrator, and the Court approved that designation in its Preliminary Approval Order. Preliminary Approval Order, ¶ 10. The Court approved the Notice Plan contained in the Settlement with modifications to the contents of the Long Form Notice, which were implemented. Shawver Decl. ¶¶ 5–13; *see also* Exhibits B–C to Shawver Decl. On August 5, 2022,

6

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

Angeion caused notice to be disseminated through a combination of email and postcard notice. *See* Shawver Decl. ¶¶ 7, 9.

Within 30 days after the date of entry of the Preliminary Approval Order, the Claims Administrator established a dedicated Settlement Website that includes the Agreement, the Preliminary Approval Order entered by the Court, the Long Notice, and the Claim Form approved by the Court. SA ¶ 4.3.3; Shawver Decl. ¶¶ 12–13. The Claim Form could be completed electronically on the website. *Id*. The Claims Administrator also posted on the Settlement Website copies of the motion for final approval of the Settlement, and the motion for Attorneys' Fees and Costs and Service Award. FAQs and an option to speak with a live operator also were made available by the Claims Administrator to address Settlement Class Member inquiries. *Id*.

### E.    Reaction of the Settlement Class

The Class's response to the Settlement has been positive. Only one Settlement Class Member submitted a request to exclude prior to the deadline to submit such requests. *See* Shawver Decl. ¶ 15. No objections were received. Shawver Decl. ¶ 16. The deadline to submit a claim form was October 16, 2022. Shawver Decl. ¶ 14. As of October 28, 2022, Angeion has received 104,413 claim form submissions. Shawver Decl. ¶ 14. The claim form submissions are subject to final auditing, including a full assessment of each claim's validity and a review for duplicative and/or fraudulent submissions.  Angeion will provide a supplemental declaration prior to the Final Approval Hearing to provide an update on claim assessment. Shawver Decl. ¶ 14.

## III.   ARGUMENT

### A.    The Settlement Class Should Be Certified For the Purpose of Entering Judgment on the Settlement

#### 1.    The Settlement Class Meets the Requirements of Rule 23(a)

The prerequisites for class certification under Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality, and adequacy. The Settlement Class satisfies these criteria.

The Settlement Class consists of 285,983 members, more than enough to render joinder

impractical. SA ¶ 1.38. In addition, the claims of all Settlement Class Members "depend upon a common contention" the determination of which "will resolve an issue central to the validity of each" Settlement Class Member's claims. *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, all claims arise out of the Security Incident. Whether Defendant's conduct was actionable negligence, and unlawful and unfair conduct under the UCL, are key common issues on which each Settlement Class Member's claims turn. *See In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2017 WL 3730912, at *2 (N.D. Cal. Aug. 25, 2017).

Typicality and adequacy are also satisfied. "It is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017). Defendant's allegedly deficient and unreasonable data security and notification of the Security Incident were directed to all Settlement Class Members, who were all impacted by the same Security Incident. In addition, the proposed Settlement Class representative has no conflicts with the Settlement Class Members, and has participated actively in the Litigation and mediation. Class Counsel are experienced in complex class actions, including customer data breach litigation.

### 2. The Settlement Class Meets the Requirements of Rule 23(b)

The Court must also determine that the Settlement Class meets one of the subsections of Rule 23(b). Courts have held that common issues predominate for purposes of certifying settlement classes of data breach victims. *See Anthem*, 2017 WL 3730912, at *2; *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020); *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 19-MD-2879, 2022 WL 1396522, at *26 (D. Md. May 3, 2022) (finding Rule 23(b)(3) met on contested motion for class certification in multidistrict consumer data breach class action).

Here, the Settlement Class satisfies Rule 23(b)(3) because common questions predominate over any questions affecting only individual members, and class resolution is superior to other methods for a fair resolution of the controversy. The central issue in the case for each Settlement Class Member concerns Defendant's consumer data collection and security practices, the circumstances and details of the Security

8

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

Incident and whether the Security Incident occurred as a result of Defendant's inadequate, unreasonable, and unlawful practices. Further, each Settlement Class Member's claims concern Defendant's response to, investigation of, and notification of the Security Incident. Every Settlement Class Member shares these considerable factual and legal issues in common. Certification for purposes of entering settlement is further supported by the fact that the settlement obviates potential manageability complications of a trial, "for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Because the Settlement Class meets the elements of Rule 23(a) and (b), the Court should reaffirm its findings in the Preliminary Approval Order and certify the Settlement Class for purposes of granting final approval and entering judgment on the Settlement.

### B.    The Settlement Should Be Finally Approved

Upon final approval, Rule 23(e)(2) requires the Court to consider whether:

   A.    the class representatives and class counsel have adequately represented the class;

   B.    the proposal was negotiated at arm's length;

   C.    the relief provided for the class is adequate, taking into account:

      i.    the costs, risks, and delay of trial and appeal;

      ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      iii.    the terms of any proposed award of attorney's fees, including timing of payment; and

      iv.    any agreement required to be identified under Rule 23(e)(3); and

   D.    the proposal treats class members equitably relative to each other.

*Moreno v. Capital Bldg. Maint. & Cleaning Services, Inc.*, 19-CV-07087-DMR, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021) (quoting Fed. R. Civ. P. 23(e)).

In addition, the Northern District of California's Procedural Guidance for Class Action Settlements directs that, a motion for final approval should include:

9

information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who elected to opt out of the class, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections.

N.D. Cal., *Procedural Guidance for Class Action Settlements* (Dec. 5, 2018) (hereinafter "District Guidance").

Because the analysis on preliminary approval included many of these factors, Plaintiff's motion for preliminary approval has discussed these factors at length. Plaintiff incorporates those arguments as if fully set forth herein. Plaintiff addresses these factors below inasmuch as they are further informed by the developments of the implementation of the notice plan and claims administration and the Settlement Class Members' reaction to the Settlement.

### 1.    District Guidance Analysis

The Declaration of Jenny Shawver contains the necessary details with respect to notice based on the records contained in the Class List. On or about July 7, 2022, Angeion received a data file containing 285,999 records which contained, where available, names and mailing addresses for Settlement Class Members ("Class List"). The Class List also identified whether a Settlement Class Member is an Active Borrower or an Inactive Borrower, and whether a Settlement Class Member belongs to Tier 1 or Tier 2. Shawver Decl. ¶ 5. After removing duplicates and entries that consisted of a name only, Angeion identified 170,300 records that contained an email address and/or mailing address. Shawver Decl. ¶ 5.

Plaintiff's counsel is informed that contained in the Class List that was provided to the Claims Administrator in this matter are 99,880 entries containing names only. Plaintiff's counsel is further informed that these "names only" entries relate primarily or perhaps exclusively to potential customers of Defendant whose home loans Defendant declined to service. Plaintiff's counsel is informed that Defendant lacks contact information, including email and postal addresses, for the names only entries and has not been able to locate any contact information after a reasonable search.[2]

---

[2] Plaintiff's counsel has discussed these matters with counsel for Defendant on November 1 and 2, 2022, and anticipates that Defendant will submit a declaration setting forth these facts in detail.

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

Plaintiff's counsel is informed that, although the investigation into the Security Incident indicated that files containing information pertaining to these "names only" entries was potentially compromised, Defendant lacks information concerning any past or present mailing address or email address for these "names only" entries. Plaintiff's counsel is informed that for these "names only" entries, Defendant never sent a notification letter informing them of the Security Incident.[3]

Angeion caused a reverse append search to be performed to identify corresponding email addresses based on the available data points provided in the Class List (*e.g.*, name and mailing address). Shawver Decl. ¶ 6. Angeion was able to identify 33,208 corresponding email addresses as a result of the reverse append search for Settlement Class Members. Shawver Decl. ¶ 6. Angeion then subjected the email addresses to an email validation process whereby the ISP is contacted to determine if the email address still exists. Shawver Decl. ¶ 6. As a result of the validation process, Angeion identified a total of 33,297 valid email addresses from the Class List and reverse append search. Shawver Decl. ¶ 6. On August 5, 2022, Angeion caused notice of the Settlement to be sent to the 33,297 valid email addresses. Shawver Decl. ¶ 7. In total, 28,517 email notices were delivered and 4,780 email notices could not be delivered. Shawver Decl. ¶ 8.

On August 5, 2022, Angeion caused notice of the Settlement to be mailed to the 165,419 Settlement Class Members with mailing addresses contained in the Class List who were identified in the Class List as Inactive Borrowers, and for whom Angeion was either (1) unable to validate any email address pursuant to the above-described Reverse Append Search; (2) or an email notice was sent pursuant to the above-described Reverse Append Search, but the email was subsequently identified as not delivered. Shawver Decl. ¶ 9. Prior to mailing, the addresses were processed through the United States Postal Service ("USPS") National Change of Address database to identify updated addresses for individuals who have moved in the past four years and filed a change of address card with the USPS. Shawver Decl. ¶ 9.

---

[3] Should the Court find it warranted, Plaintiff proposes that the individuals identified in the Class List by "name only" (the "Names Only Entries") be expressly excluded from the Class definition, and Settlement Agreement and Release. Plaintiff tenders an alternative proposed order granting final approval that does just that. *See* Alternative Proposed Order Granting Final Approval, attached hereto as Exhibit 3.

Angeion took the following actions for Notices returned as undeliverable by the USPS: (1) Notices returned as undeliverable with a forwarding address were forwarded to the updated address provided by the USPS; (2) Notices returned as undeliverable without a forwarding address were subjected to address verification searches ("skip traces") in an attempt to locate updated addresses; (3) Notices were remailed to updated addresses obtained via the skip trace process. Shawver Decl. ¶ 10.

As a result of the above-described efforts, a total of 52,035 notices were returned as undeliverable by the USPS. A total of 35,806 notices were remailed to updated addresses identified via skip trace results or forwarding addresses provided by the USPS. Shawver Decl. ¶ 11. Of these 35,806 notices that were remailed, 4,784 were returned again. Shawver Decl. ¶ 11.

In accordance with the Settlement Agreement, on August 5, 2022, Angeion established the following website dedicated to this Settlement:   www.SN-DataBreachSettlement.com ("Settlement Website"). Shawver Decl. ¶ 12. The Settlement Website contains general information about the Settlement, including important dates and deadlines, important documents available for download, responses to frequently asked questions and contact information for the Settlement Claims Administrator. Shawver Decl. ¶ 12. Settlement Class Members were also able to submit a claim form via the Settlement Website. Shawver Decl. ¶ 12. In addition, on August 5, 2022, Angeion activated the following toll-free number established for this Settlement: 1-844-846-4648. Shawver Decl. ¶ 13. The toll-free hotline utilizes an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provides essential information regarding the Settlement. Shawver Decl. ¶13. The toll-free hotline is available 24 hours a day, 7 days a week. Settlement Class Members can also request, via the toll-free hotline, that a notice or claim form be mailed to them. Shawver Decl. ¶ 13.

The deadline to submit a claim form was October 16, 2022. Preliminary Approval Order, ¶ 21. Currently, prior to validation of claims, Angeion reports receiving 104,413 timely claim form submissions. Shawver Decl. ¶ 14. The claim form submissions are subject to final auditing, including a full assessment of each claim's validity and a review for duplicative and/or fraudulent submissions. Shawver Decl. ¶ 14. Angeion will provide a supplemental declaration prior to the Final Approval Hearing to provide an update

12

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

1    on the claim assessment. Shawver Decl. ¶ 14.

2         The deadline for Settlement Class Members to submit requests for exclusion and objections to the

3    Settlement was September 21, 2022. Preliminary Approval Order, ¶ 21. There was one (1) request for

4    exclusion. Shawver Decl. ¶ 15. And, Angeion has not received, nor been made aware of, any objections

5    to the Settlement. Shawver Decl. ¶ 16.

6              **2.    The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial**

7         Data breach class actions, such as this case, present complex and novel issues of fact and law that

8    would very likely need to be litigated, such as the technical aspects of Defendant's information systems

9    and Defendant's response and investigation into the Security Incident. *See In re Sonic Corp. Customer*

10   *Data Sec. Breach Litig.*, 1:17-MD-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm

11   of data breach litigation is complex and largely undeveloped. It would present the parties and the Court

12   with novel questions of law."). There is little doubt that a battle of the experts on damages and liability

13   (likely more than one for each party) would be featured. Third-party discovery regarding investigations

14   and Defendant's vendors may need to be conducted. After a complex discovery process, the fact finder

15   would need to apply a highly technical set of facts and perhaps economic modeling to the relevant legal

16   standards. Plaintiff is mindful that, even though many data breach cases have been brought, most have

17   settled. Relatively few have been litigated through to trial, and there are significant risks and uncertainties

18   concerning the development of the facts and law in this area.

19        As evidenced by Defendant's motions to dismiss, Defendant is well funded and would be

20   committed to a vigorous defense through trial, judgment, and appeal. This case involves hundreds of

21   thousands of people, technical factual issues, relatively novel legal issues, and is likely to involve

22   numerous experts and third parties. Achieving finality could take years and would certainly involve

23   considerable expense of the parties and the judicial system. Even then, the Settlement Class could wind

24   up losing the case.

25        Furthermore, because Defendant continues to service the loans for the Settlement Class Members

26   who are Active Borrowers, settlement of the class action facilitates the Parties' performance of their

27                                              13

28
     Memorandum Of Points And Authorities In Support of
     Plaintiff's Motion For Final Approval of Class Action Settlement

obligations and services. All this counsels in favor of settlement and repose.

### 3. The Method for Distributing Relief Is Adequate

Two forms of relief are to be distributed within the later of 90 days after the Effective Date or 30 days after all disputed claims have been resolved, and with the Parties' authorization. SA ¶ 7.5. Settlement Class Members who submitted approved claims will be sent a check via U.S. mail, or if they designated an electronic payment form on their claim form, the payment will be transmitted according to the claimant's instructions. SA ¶ 7.5. For any checks that are returned as undeliverable, the Claims Administrator will conduct a skip trace to attempt to locate a more recent address. *Id*. Furthermore, for those Settlement Class Members who elected to participate in the additional credit monitoring and identity theft protection, they will receive the benefits of this form of relief. SA ¶ 2.3.

The Settlement uses reasonable methods for processing claims and distributing relief to eligible claimants. *See* SA ¶¶ 2.4, 2.5. Settlement Class Members may submit claims electronically if they choose, using the webform available on the Settlement Website identified on the Summary Notice. SA ¶ 4.3.3; SA Exhibit A. They may also submit claims through the mail. SA ¶ 4.3.3; SA, Exhibit A. Claimants need not submit evidentiary support or documentation to prove membership or to receive a payment under the Settlement, but they do sign the claim form and attest and certify to the best of their knowledge that they received from SN Servicing Corporation a data breach notification letter. *See* Claim Form, attached as Exhibit A to Settlement Agreement (Dkt. 50-1).

For each Settlement Claim submitted, the Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; and (2) the claimant has provided all information required to complete the Claim Form by the Claims Deadline. SA ¶ 7.2. If the Claims Administrator identifies an incomplete or unsigned Claim Form, the Claims Administrator shall request additional information and give the claimant 14 days to cure the defect before rejecting the Settlement Claim. SA ¶¶ 7.2.1, 7.2.2.

### 4. The Settlement Is Adequate in Light of the Proposed Award of Attorney's Fees

Any Attorneys' Fees and Expenses Award must be approved by the Court upon an application

14

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

filed by Class Counsel. Class Counsel seek $270,000, to be paid from the Settlement Fund. SA ¶ 9.1. Class Counsel applied to the Court for such approval. *Id.*

As set forth more fully in Plaintiff's Motion for Attorneys' Fees and Costs, and Service Award (Dkt. 55), the requested award is appropriate in light of the considerable benefits provided by the Settlement on behalf of the Class. The absence of any objections and one (1) opt out corroborates the fairness and reasonableness of the Settlement Agreement.

The Claims Administrator will pay to Class Counsel the amount awarded by the Court within 10 days after the Court executes an order granting the award. SA ¶ 9.3. Importantly, the finality or effectiveness of the Settlement shall not depend upon the Court awarding any particular award to Class Counsel. SA ¶ 9.4.

### 5.    The Proposal Treats Class Members Equitably Relative to Each Other

In addition to the non-monetary relief provided by Defendant in the form of enhanced data security practices, and the extension of the credit monitoring and identity theft protection available to all Settlement Class Members, the two-tier structure of the monetary Awards under the Settlement enhances the equity of the Settlement. The Settlement recognizes that those Settlement Class Members who had their Social Security Numbers exposed in the Security Incident are potentially worse off than those who only had their Personal Information, other than Social Security Numbers, exposed. The Court's orders on Defendant's motions to dismiss endorses this distinction (Dkt. 27, pp. 8-9; Dkt. 40, p. 13), and the Settlement takes that into account by providing enhanced relief for those whose Social Security Numbers were compromised .

No Rule 23(e)(3) agreements are made relating to this matter.

### 6.    The *Hanlon* Factors Support Final Approval

Rule 23 and the District Guidance overlap with many of the *Hanlon* factors, which are: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

15

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Because only factors (7) and (8) have the potential for changed circumstances since the Court entered its Preliminary Approval Order, with all other factors being previously addressed, factors (7) and (8) are further detailed below, with Plaintiff's prior argument in support of Preliminary Approval, and the analysis above, in relation to the Rule 23(e)(2) factors, fully incorporated by reference.

### 7. The Presence of a Government Participant

Pursuant to the Notice Plan, on June 27, 2022, Angeion caused CAFA Notice regarding the initial settlement to be sent to the Attorneys General of all states, as well as the Attorney General of the United States. Shawver Decl. ¶ 4; 28 U.S.C. § 1715. The Parties have not received any objections, including from CAFA notice recipients. Shawver Decl. ¶ 16.

### 8. The Reaction of Class Members to the Proposed Settlement

As described above, the reaction to the Settlement has been positive, with 104,413 claims being timely filed, only one request for exclusion being submitted, and no objections to the Settlement having been lodged. Shawver Decl. ¶¶ 14–16. Thus, the Court may consider the reaction of Settlement Class Members to be positive. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections.").

## IV. CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court enter an order granting final approval of the Settlement, and for such other relief as the Court deems just and appropriate under the circumstances.

16

Case No. 3:21-cv-03355-WHO
Memorandum Of Points And Authorities In Support of
Plaintiff's Motion For Final Approval of Class Action Settlement

Dated: November 2, 2022            By: /s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr. (pro hac vice)
tom@attorneyzim.com
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile

Marc E. Dann (pro hac vice)
Brian D. Flick (pro hac vice)
DANNLAW
15000 Madison Avenue
Lakewood, Ohio 44107
(216) 373-0539 telephone
(216) 373-0536 facsimile
notices@dannlaw.com

Mitchell Chyette
125 12th Street, Suite 100-BALI
Oakland, CA 94607-3699
(510) 388-3748
(510) 680-3760 facsimile
mitch@chyettelaw.com

Counsel for Plaintiff and the Settlement Class